Dashiell PORTER, By and Through his Guardian ad Litem, Deborah Blair PORTER; John Porter, an individual; and Deborah Blair Porter, an individual, Plaintiffs,

v.

BOARD OF TRUSTEES OF MANHATTAN BEACH UNIFIED SCHOOL DISTRICT; Manhattan Beach Unified School District; Gerald F. Davis, individually and in his official capacity as Superintendent of Manhattan Beach Unified School District; Linda M. Jones, individually and in her official capacity as Director of Pupil Personnel Services of Manhattan Beach Unified School District; Board of Education of the State of California; California Department of Education; Delaine Eastin, in her official capacity as State Superintendent of Public Instruction for the State of California, Defendants.

No. CV008402RSWL(RNBX).

United States District Court, C.D. California.

Dec. 12, 2000.

Steven Wyner, Law Offices of Steven Wyner, Santa Monica, CA, for plaintiffs.

Sharon A. Watt, Andrew V. Arczynski, Filarsky & Watt LLP, Ojai, CA, for defendants Board of Trustees Manhattan Beach Unified School District and Manhattan Beach Unified School District.

Linda A. Cabatic, Marsha A. Bedwell, Michael E. Hersher, Deputy General Counsel, California Department of Education, Sacramento, CA, for defendants California Department of Education, Delaine Eastin, Superintendent of Public Instruction and State Board of Education.

Gary Robert Gibeaut, John W. Allen, Gibeaut, Mahan & Briscoe, Los Angeles, CA, for defendants Gerald F. Davis and Linda M. Jones.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

LEW, District Judge.

### I. INTRODUCTION

In the case pending before this Court, Plaintiffs assert constitutional and statutory claims for the provision of allegedly inadequate education for a disabled minor student. Before the Court are (1) Defendants Manhattan Beach Unified School District and Board of Trustees of Manhattan Beach Unified School District's Motion to Dismiss Plaintiffs' Complaint and (2) Defendants Gerald F. Davis and Linda M. Jones's Motion to Dismiss Plaintiffs' Complaint Pursuant to Rules 12(b)(1), 12(b)(6), and 12(f) of the Federal Rules of Civil Procedure. Defendants Board of Education of the State of California, California Department of Education, and Delaine Eastin have joined in the Motions to Dismiss.

The matter came on for hearing on November 6, 2000, at which time the Court heard oral argument and took the matter under submission. After reviewing all pa-

pers filed in support of and in opposition to the Motions and the arguments of counsel, the Court hereby **GRANTS** Defendants' Motions to Dismiss.

## II. PROCEDURAL BACKGROUND

Dashiell Porter ("Student") is a thirteen-year-old autistic student in the defendant school district who was found eligible for special education when he was three years old. He is a plaintiff in this action (represented through his mother, Deborah Blair Porter), along with his parents, Deborah Blair Porter and John Porter (collectively, "Plaintiffs"). Plaintiffs filed this action against the Board of Trustees of Manhattan Beach Unified School District, Manhattan Beach Unified School District ("MBUSD") (together, "Local Defendants"); Gerald F. Davis, Superintendent of MBUSD, and Linda M. Jones, Director of Pupil Personnel Services for MBUSD (together, "Individual Defendants"); and the Board of Education of the State of California, the California Department of Education ("CDE"), and Delaine Eastin (collectively, "State Defendants") to compel Local and Individual Defendants to comply with a written order entered by the California Special Education Hearing Office ("SEHO") on June 30, 1999, and to compel the State Defendants to ensure that the Local Defendants fully comply with the SEHO order.

Plaintiffs obtained the SEHO order after instituting administrative proceedings to force MBUSD to provide Student with compensatory education relating to social and academic areas in which his skills were deficient. The SEHO determined that Student's deficiencies resulted from MBUSD's failure to provide Student a free appropriate public education ("FAPE") during the 1997–1998 school year, as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Based on this finding, the SEHO ordered MBUSD to provide Student the compensatory education described above during the 1999–2000 school year.

Plaintiffs allege that MBUSD failed to provide Student any compensatory education related to his academic deficiencies during the 1999–2000 school year, and continues to refuse to do so despite the requests of Student's parents. Plaintiffs also allege that Student only received compensatory education relating to his social skills deficiencies for approximately half of that school year. In their complaint, Plaintiffs assert four causes of action: (1) 42 U.S.C. § 1983, based on Defendants' violation of the IDEA; (2) violations of the Due Process and Equal Protection Clauses of the California Constitution (Article I, Section 7); (3) a violation of the IDEA, 20 U.S.C. § 1415(i)(2); and (4) a violation of California Education Code section 56000 *et seq.*

Plaintiffs claim they are entitled to various forms of relief. First, Plaintiffs seek to enforce the June 30, 1999, SEHO order against the Local Defendants. Second, they seek reimbursement for the cost of certain educational services for Student that Student's parents felt compelled to obtain as a result of the Local Defendants' failure to provide Student with the SEHO-ordered compensatory education. Third, they request an order directing MBUSD to pay for a year of social skills modeling and instructional services provided by a nonpublic agency. They also seek the appointment of a special master pursuant to Rule 53 of the Federal Rules of Civil Procedure. Finally, Plaintiffs request monetary damages against the Individual Defendants for their willful failure to comply with the SEHO order and their intentional disregard for Student's statutory and constitutional rights.

Local Defendants and Individual Defendants have brought the instant Motions to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6). State Defendants join in these Motions. Defendants base their Motions on several grounds. First, they argue that this Court lacks subject matter jurisdiction because Plaintiffs are required to exhaust their administrative remedies before filing an original civil action for a violation of the IDEA or any cause of action, such as § 1983, that is based on a claimed violation

of the IDEA. Second, they argue that they are immune from suit under the Eleventh Amendment to the United States Constitution. Individual Defendants further argue that they are entitled to qualified immunity, that there is no private right of action under California Education Code section 56000 *et seq.*, and Plaintiffs' claim under Article I, Section 7 of the California Constitution essentially is a claim for failure to educate, for which there is no private right of action under California law. Defendants argue that Plaintiffs have failed to allege sufficient facts to overcome the impediments to suit listed above.

### III. FACTUAL BACKGROUND

Student was found eligible for special education when he was three years old based on speech and language deficiencies. Thereafter, in 1991, Student began to receive speech and language therapy and was later placed in a special day class. During his fourth-grade year (1997–1998), Student transitioned from the special day class to a general education classroom. *Complaint* ¶ 17.5. During the 1998–1999 school year, Student remained in a general education classroom and continued to receive speech and language therapy. *Id.* ¶ 17.6. At the beginning of the 1998–1999 school year, however, MBUSD testing revealed that Student had various academic and socialization deficiencies.

On January 4, 1999, Student's parents initiated due process proceedings on Student's behalf with the SEHO pursuant to 20 U.S.C. § 1415 and California Education Code section 56000 *et seq. Complaint,* Exh. A at 4. On June 30, 1999, the SEHO hearing officer issued her written decision. The hearing officer concluded that MBUSD failed to provide Student with a FAPE during the 1997–1998 school year, as well as during the summers of 1997 and 1998, because: (a) MBUSD failed to offer a program reasonably calculated to provide Student with an educational benefit in reading comprehension, listening comprehension, and oral expression; (b) MBUSD failed to provide Student with appropriate support and services; and (c) MBUSD failed to provide Student with appropriate social skills modeling. *Id.* ¶ 18. The hearing officer determined that these "failures constituted significant denials of FAPE which impeded [Student's] progress in academics and socialization." *Id.,* Exh. A at 20.

The hearing officer concluded that because "reimbursement is not available," MBUSD was obligated to provide Student compensatory education for the 1999–2000 school year. The appropriate form of compensatory education was left to the Individualized Education Program ("IEP") team members, including Student's parents because the record before the SEHO hearing officer was not "sufficiently clear to fashion the form of compensatory education that would adequately compensate [Student] for the denials of FAPE." *Id.,* Exh. A at 20.

The hearing officer then ordered MBUSD to convene an IEP meeting within thirty calendar days of the hearing officer's decision (i.e., on or before July 30, 1999) "to determine the appropriate form of compensatory education to which [Student] is entitled for the denials of FAPE which occurred during summer 1997, summer 1998, and the 1997–98 school year. The compensatory education program shall supplement the program [Student] attends during the 1999–2000 school year." *Id.,* Exh. A at 21. The hearing officer further directed MBUSD:

> As to appropriate forms of compensation, the IEP team shall include social skills instruction and/or modeling, and remedial instruction in areas of academic deficit. The IEP team shall determine the nature of these services and the extent to which they will be necessary to effectuate the purpose of compensating [Student] for the previous denials of FAPE. Additionally, the IEP team shall determine whether it would be more effective to remediate [Student]'s areas of weakness during the school day or during nonschool hours,

and shall determine provision of services accordingly.

*Id.*

Plaintiffs allege that MBUSD failed to hold an IEP team meeting on or before July 30, 1999, and that such meeting was not held until September 13, 1999. *Complaint* ¶ 29. At the meeting, Student's parents presented a typed plan for compensatory education requesting particular educational and administrative services, including a one-on-one aide to assist Student in all academic subjects. *Id.* ¶¶ 30, 30.1. MBUSD did not agree to provide a one-on-one aide to assist Student in any classes. *Id.* ¶ 31. At the meeting, MBUSD proposed certain goals and objectives related to Student's social skills and offered tutoring to address reading and listening comprehension and oral expression deficiencies. *Id.* ¶ 32. Plaintiffs further allege that the meeting adjourned without an agreement as to the nature and services to be provided to Student as compensatory education. *Id.* ¶ 33.

Later in September, Student's parents submitted a ten-page statement detailing their objections to proposals made by MBUSD at the September meeting; however, Student's parents nonetheless agreed to designated instructional services for social skills and an after-school reading tutorial program, "subject to certain reasonable conditions precedent." *Id.* ¶ 34. Student's parents insisted that the tutor be " 'qualified to teach reading, [have] a special education qualified credential and [have] training or experience in teaching children with autism, auditory processing deficits and significant reading comprehension, listening comprehension and oral language deficits' similar to Student's deficits." *Id.* (brackets in original).

On October 11, 1999, Student's father attended another IEP meeting to conduct Student's annual review. At the meeting, Student's father, through his attorney, presented another proposal for compensatory education during the 1999–2000 school year. Plaintiffs allege that MBUSD elected to defer consideration of this proposal until acceptable goals and objectives were developed. *Id.* ¶ 38. Student's father objected to goals and objectives that MBUSD presented at the October 11, 1999, meeting; MBUSD submitted revised goals and objectives to Student's attorney on October 20, 1999. *Id.* ¶ 39. On November 1, 1999, MBUSD submitted speech and language goals and objectives to Student's parents. *Id.* ¶ 40. One week later, Student's parents communicated their objections to MBUSD's proposed academic and speech/language objectives. *Id.* ¶ 41.

Plaintiffs allege that on January 28, 2000, MBUSD began to provide Student with compensatory education related to his socialization deficits. *Id.* ¶ 48. According to Plaintiffs, MBUSD did not and continues to refuse to provide Student compensatory education related to his academic deficiencies. As a result, Student's parents sought private instruction for Student at the cost of $1300 per week [1] in an effort to remediate Student's deficiencies. *Id.* ¶ 50. Student's mother notified MBUSD that Student's parents would seek reimbursement from MBUSD for this instruction. *Id.* ¶ 49.

## IV. DISCUSSION

Plaintiffs allege that MBUSD's Board and MBUSD's Superintendent—Defendant Gerald F. Davis—failed to adopt policies, procedures, and practices necessary to ensure that MBUSD complied with SEHO's order; that Defendant Davis failed to adequately supervise the activities of Defendant Jones concerning compliance with the SEHO order; that Davis knowingly failed and refused to direct Jones to comply with SEHO's order; that Jones knowingly failed and refused to comply with SEHO's order; that State Defendants failed to adopt policies, procedures, and practices necessary to ensure that MBUSD complies with written decisions and orders issued by SEHO, including the June 30, 1999, order at issue; and that

---

1. Student receives 20 hours of private instruction per week.

State Defendants failed to adequately monitor MBUSD's compliance with written decisions and orders issued by SEHO.

## A. Parties' Arguments

In Local Defendants' First Amended Motion to Dismiss,[2] they first argue that this Court lacks subject matter jurisdiction over Plaintiffs' alleged violations of the IDEA because Plaintiffs have failed to allege exhaustion of their available administrative remedies, as required under the IDEA, and because Local Defendants are arms of the state and therefore enjoy Eleventh Amendment immunity from suit. Local Defendants argue that Plaintiffs' claim under § 1983 is also barred because the IDEA provides the exclusive remedy for violations of the IDEA. Local Defendants further argue that Plaintiffs' entire action should be dismissed pursuant to Rule 12(b)(6) because Plaintiffs have failed to plead exhaustion of administrative remedies.

In Individual Defendants' Motion to Dismiss, they first argue that Plaintiffs' complaint fails to state facts sufficient to sustain a claim against Davis and Jones for a violation of § 1983. They assert that they are entitled to qualified immunity for suits against them in their individual capacities. They also argue that Plaintiffs' claim under the California Constitution essentially alleges a failure to educate, and that under California law, there is no private right of action for "failure to educate" against a public school district. Individual Defendants further argue that Plaintiffs cannot state a claim under California Education Code section 56000 *et seq.* because no private right of action exists for a violation of this section. Individual Defendants also argue that pursuant to Rule 12(f), the Court should strike Plaintiffs' request to appoint a special master because such relief is disfavored under Rule 53 of the Federal Rules of Civil Procedure. Individual Defendants join Local Defendants' argument that the Court lacks subject matter jurisdiction over Plaintiffs' IDEA claim because Plaintiffs have failed to exhaust their administrative remedies.

State Defendants join in the Local and Individual Defendants' Motions to Dismiss, and they make additional arguments in support of the Motions. First, they argue that the question of whether the most recent IEP determinations have offered Student a FAPE is a new question to be resolved by the SEHO at another due process hearing. State Defendants also argue that Plaintiffs have alleged numerous procedural violations surrounding parental participation in the IEP process, and that each alleged violation is subject to investigation under CDE's procedures. Plaintiffs, however, have not raised any of these violations in an administrative "compliance complaint." The SEHO hearing officer did not address these violations in her June 30, 1999, order; indeed, they had not occurred when the hearing officer issued the order.

Plaintiffs oppose all Defendants' Motions on several grounds. First, they argue that Local and Individual Defendants failed to comply with Local Rule 7.4.1 because both meetings were untimely. Plaintiffs also assert that Local Defendants failed to inform Plaintiffs' counsel that they intended to argue in their Motion that the IDEA is an exclusive remedy which preempts a § 1983 claim and that they would claim immunity under the Eleventh Amendment. Plaintiffs further argue that counsel for Individual Defendants also failed to comply with Local Rule 7.4.1 because counsel failed to inform Plaintiffs' counsel that Individual Defendants' Motion would be based in part upon an argument that Plaintiffs are not entitled to the appointment of a special master. Second, Plaintiffs argue that Individual Defendants' Motion to Dismiss should be denied because the Motion was not filed timely. Individual Defendants filed their Motion one day

2. Local Defendants submitted a "First Amended Notice of Motion and First Amended Motion to Dismiss" because the Table of Contents and Table of Authorities were inadvertently omitted from the original Motion.

late and without request for additional time in which to respond to the Complaint or explanation for the delay.[3]

Substantively, Plaintiffs argue that the IDEA is not the exclusive remedy precluding a § 1983 claim because Congress has said and case law has determined otherwise. Additionally, Plaintiffs' assert that their complaint is sufficient to defeat Individual Defendants' claims of qualified immunity because Plaintiffs alleged that Individual Defendants acted in bad faith and/or with intentional disregard for Student's constitutional rights. With respect to Eleventh Amendment immunity, Plaintiffs argue that Congress expressly abrogated States' Eleventh Amendment immunity in the IDEA and that such immunity does not preclude injunctive relief against Individual Defendants.

Plaintiffs make several arguments against Defendants' assertions that they are required to exhaust administrative remedies before coming to federal court. First, they argue that pursuing administrative remedies would be futile because Defendants have "previously demonstrated that they will not be bound by or comply with SEHO's orders," and Plaintiffs' prior requests for assistance from State Defendants have "fallen on deaf ears." Plaintiffs also argue that they never received any notice that they had to exhaust state compliance procedures before filing suit in federal court to compel compliance with SEHO's order. Second, Plaintiffs claim that they are excused from exhausting administrative remedies because any relief obtained would be inadequate: Monetary damages, which Plaintiffs seek under § 1983, are not available under IDEA or CDE compliance procedures, and SEHO cannot appoint a special master under Rule 53. Plaintiffs also oppose dismissal of their state law claims and Individual Defendants' motion to strike Plaintiffs' request for a Special Master.

## B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Individual, Local, and State Defendants all argue that Plaintiffs' claims under the IDEA and § 1983 should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because Plaintiffs have failed to exhaust administrative remedies before bringing these claims. State and Local Defendants also argue that dismissal is warranted because they are immune from suit under the Eleventh Amendment to the United States Constitution.

■ Federal courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). The plaintiff bears the burden of establishing subject matter jurisdiction, and the court presumes lack of jurisdiction until the plaintiff proves otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

■ A motion to dismiss a case pursuant to Rule 12(b)(1) challenges a federal court's subject matter jurisdiction over the action. A 12(b)(1) motion is appropriate when plaintiff has failed to exhaust administrative remedies that are a prerequisite to plaintiff's suit. *See Honig v. Doe*, 484 U.S. 305, 326–27, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (failure to exhaust administrative remedies under the IDEA before bringing a civil action in federal court deprives the court of subject matter jurisdiction over the action); *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure: Civil* § 1350 (2d ed.1990). A 12(b)(1) motion is also appropriate when plaintiff's claim is barred by sovereign immunity. Wright & Miller, *supra*, § 1350.

### 1. The IDEA and Exhaustion of Administrative Remedies

#### a. The IDEA

The IDEA requires state education agencies that receive federal funds to mon-

---

**3.** Even if true, these infractions do not war- rant denying Defendants' Motions.

itor the provision of education in the state and to ensure an adequate education for all children, including those with disabilities. The IDEA provides for substantial parental involvement in developing an appropriate program of education for disabled children. Parents, teachers, and school district representatives together determine what constitutes a "free appropriate public education" ("FAPE") for each disabled child. *See Hoeft v. Tucson Unified Sch. Dist.,* 967 F.2d 1298, 1300 (9th Cir.1992). The end result is an individualized education program ("IEP"), one that is tailored to the child's unique needs. 20 U.S.C. § 1414(d); *Hoeft,* 967 F.2d at 1300.

Congress created a comprehensive system of procedural safeguards to ensure that parents have " 'an opportunity for meaningful input into all decisions affecting their child's education.' " *Id.* (quoting *Honig v. Doe,* 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)). For example, parents must be notified in writing of changes the school district proposes or refuses to make in their child's educational program. 20 U.S.C. § 1415(b)(3). The notice must contain a description of procedural rights available to parents for challenging the district's decision and an explanation of the reasons for the decision. *Id.* § 1415(c).

■ The IDEA requires that states guarantee parents the right to seek review of any decisions concerning their child's education that they consider inappropriate. *Hoeft,* 967 F.2d at 1300. This right includes an opportunity to bring complaints about "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). The preliminary forum for complaints is an "impartial due process hearing" conducted by the local school district or state. *Id.* § 1415(f)(1). If the hearing is conducted by a local educational agency, an aggrieved party may appeal the decision to the state educational agency. *Id.* § 1415(g). A party not satisfied with the decision on appeal, or a party aggrieved by the decision under § 1415(f) who does not have the right to an appeal under subsection (g), may bring a civil action in state or federal court. *Id.* § 1415(i)(2)(A). California has adopted due process procedures pursuant to these requirements. *See* Cal.Educ.Code § 56000 *et seq.*

### b. Exhaustion of Administrative Remedies under the IDEA

■ Judicial review under the IDEA is ordinarily available only after the plaintiff exhausts administrative remedies. *See Doe v. Arizona Dep't of Educ.,* 111 F.3d 678, 680–81 (9th Cir.1997). "Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Hoeft,* 967 F.2d at 1303.

■ However, a plaintiff need not exhaust administrative remedies if it would be futile or offer inadequate relief, or if the agency has adopted a policy or pursued a practice of general applicability that is contrary to the law. *See Honig v. Doe,* 484 U.S. 305, 326–27, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *Hoeft,* 967 F.2d at 1303–04. The party alleging futility or inadequacy of IDEA procedures bears the burden of proof. *See Doe v. Arizona Dep't of Educ.,* 111 F.3d at 681.

■ The facts that Plaintiffs contend support their IDEA claim are facts that occurred after the hearing officer entered her order. The gravamen of this claim is that Defendants violated Plaintiffs' rights under the IDEA during the 1999–2000 school year. Thus, at the time the hearing officer issued her decision, these facts had not yet come into existence. The relief Plaintiffs request under their IDEA claim is the appointment of a special master

pursuant to Rule 53 of the Federal Rules of Civil Procedure. Plaintiffs argue that although the grant of such relief is the exception rather than the rule, it is relief that is not available under the IDEA; thus, requiring Plaintiffs to first exhaust administrative remedies to obtain the relief requested under this claim would not provide adequate relief.

■ A court appoints a special master under Rule 53 only to help the court in a case where help is needed, and the special master's appointment and activities are only for the purpose of assisting the court to get facts and arrive at the correct result in complicated litigation pending before the court. A special master has no wider scope of activity than the court itself. *See Webster Eisenlohr, Inc. v. Kalodner,* 145 F.2d 316, 319 (3d Cir.1944). The powers and authority with which Plaintiffs propose the Court vest an appointed special master are much broader than this Court's proper sphere of activity, especially considering the specialized nature of the subject matter at hand. Plaintiffs propose that a special master be vested with the powers and authority to, *inter alia,* "approve the IEP as developed, including, but not limited to: (a) the designation of related services to be provided by MBUSD or by a nonpublic agency (including, but not limited to, consultants expert in the areas of autism and curriculum modification) . . .; and (b) the nature and extent of additional compensatory education (if any) required to compensate Student for past denials of a FAPE." *Complaint* ¶ 6.4.

Plaintiffs correctly state that the appointment of a special master is not available under the IDEA. However, the *type* of relief Plaintiffs seek is of a type that is available under a relevant administrative scheme: The broad "watchdog" powers with which Plaintiffs propose a special master be vested are the type of procedural safeguards the IDEA contemplates in its remedial scheme. Therefore, resort to an administrative remedy would provide adequate relief.

■ To the extent that Plaintiffs seek enforcement of the June 30, 1999, SEHO order by bringing this IDEA claim, the Ninth Circuit has already determined that Title 5, Division 1, section 4650 of the California Code of Regulations provides the proper avenue by which to enforce SEHO orders.[4] *See Wyner v. Manhattan Beach Unified Sch. Dist.,* 223 F.3d 1026, 1029 (9th Cir.2000). Plaintiffs argue that this case did not make resort to this administrative remedy obligatory. Rather, the Court held that the SEHO lacked jurisdiction to hold due process hearings on compliance issues, and the Court merely stated that issues of non-compliance with an SEHO order *may* be brought before the Compliance Office of the California Department of Education pursuant to California Code of Regulations § 4650(a)(viii)(B). Plaintiffs may be technically correct; however, when viewed in light of the purpose of the exhaustion requirement, this avenue of administrative relief is preferable.[5]

■ Plaintiffs' argument that they should be excused from exhausting administrative remedies before filing suit in federal court because Defendants failed to provide Plaintiffs with notice that Plaintiffs had to first exhaust their administrative remedies in accordance with the CDE's

---

**4.** This regulatory provision states that "the Superintendent shall directly intervene without waiting for local agency action if one or more of the following conditions exists . . .: The complainant alleges that the local educational agency fails or refuses to comply with the due process procedures established pursuant to federal and state law and regulations; or has failed or refused to implement a due process hearing order."

**5.** As stated earlier, "Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Hoeft,* 967 F.2d at 1303.

compliance procedures is without merit. Student's parents have been represented by counsel at least since October 1999. *See Complaint* ¶ 37. This Court finds persuasive a district court case from Michigan, in which the court held that the parents of a disabled child could not rely on the failure of education authorities to notify them of their right to a hearing under the Education of the Handicapped Act [6] to excuse them from the exhaustion requirement where the parents were aware of their rights and were represented by counsel who was completely familiar with the applicable provisions. *See Waterman by Waterman v. Marquette–Alger Intermediate Sch. Dist.,* 739 F.Supp. 361 (W.D.Mich. 1990).

Furthermore, Plaintiffs' counsel indicated in his declaration that he sent to the CDE on March 10, 2000, a copy of a letter he originally sent to Local Defendants' counsel (dated March 6, 2000), in which he stated that his clients intended to file suit in federal district court to seek redress for MBUSD's failure to comply with the SEHO order. Plaintiffs' counsel also stated that a current IEP was not in place for the 1999–2000 school year, and that MBUSD was in violation of the IDEA by providing special education services without a current IEP. Plaintiffs' counsel explained that his clients would proceed directly to federal court because " 'further attempt to exhaust administrative remedies would be pointless because the District does not intend to comply with SEHO's order, or IDEA.' " *Decl. of Steven Wyner* ¶ 11. The CDE acknowledged the receipt of a copy of this letter, and invited Plaintiffs' counsel to " 'request direct state intervention' on an attached form entitled 'Request for Complaint Investigation.' " Plaintiffs' counsel did not complete or return this form because he believed that the copy of his letter to Local Defendants' counsel, which he sent to the CDE, satisfied the requirement for filing a complaint with the CDE under section

4600 *et seq.* of the California Code of Regulations.

Plaintiffs have not alleged specific facts showing that an investigation by the CDE of the matters referred to in Plaintiffs' counsel's March 6 letter would be an exercise in futility. Rather than follow the administrative enforcement scheme, Plaintiffs elected to bypass this route and proceed directly to federal court. This Court will not excuse Plaintiffs from the requirement of exhausting administrative remedies before bringing their IDEA claim to federal court. The Court therefore **DISMISSES** this claim **without prejudice** against all Defendants for failure to seek administrative enforcement of the SEHO order by the CDE.

### 2. Section 1983 Action for Violation of the IDEA

 Section 1983 provides an avenue by which to redress the deprivation by a state agent of substantive rights secured under the Constitution or federal statutes. 42 U.S.C. § 1983. When the rights at issue are statutory, a § 1983 action is impermissible when Congress indicated its intent to preclude such private enforcement either in the express language of the statute or where the statutory remedial scheme is so comprehensive that an intent to prohibit enforcement other than by the statute's own means may be inferred. *See Wright v. Roanoke Redevelopment & Hous. Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987).

### a. Eleventh Amendment Immunity

 The Eleventh Amendment to the United States Constitution provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of any Foreign State.

U.S. Const., amend. XI.

---

6. Predecessor to the IDEA.

The Eleventh Amendment embodies the principle of sovereign immunity, and thus bars a federal court from hearing claims by individuals against dependent instrumentalities of the state, their agencies, or the officials of those agencies unless the State consents to suit, or Congress has expressly abrogated the State's immunity. *See Seminole Tribe v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). A state is not a "person" within the meaning of 42 U.S.C. § 1983 and therefore may not properly be named as a defendant in a § 1983 action. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). This principle extends to state agencies and to state officers named in their official capacities. *See id.; Emma C. v. Eastin,* 985 F.Supp. 940, 946 (N.D.Cal.1997).

As dependent instrumentalities of the state, school districts are within the purview of the Eleventh Amendment. *Belanger v. Madera Unified Sch. Dist.,* 963 F.2d 248, 251 (9th Cir.1992).

The Eleventh Amendment does not, however, bar a federal court from granting prospective injunctive relief against an officer of the state who acts outside the bounds of his authority, *Cerrato v. San Francisco Cmty. Coll. Dist.,* 26 F.3d 968, 973 (9th Cir.1994), or against state officers sued in their individual capacities, *id.; Doe v. Lawrence Livermore Nat'l Lab.,* 131 F.3d 836, 839 (9th Cir. 1997). This is the "stripping doctrine" of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). This doctrine applies only where the state officials are allegedly violating federal law; it does not reach suits seeking relief against state officials for violations of state law. *See Pennhurst,* 465 U.S. at 106, 104 S.Ct. 900.

Plaintiffs' § 1983 claim must be dismissed in its entirety against the CDE and the California Board of Education because both entities are state agencies and therefore cloaked by Eleventh Amendment immunity. As California's State Superintendent of Public Instruction, Delaine Eastin enjoys Eleventh Amendment immunity from suit, even when sued only in her official capacity. *See Eaglesmith v. Ward,* 73 F.3d 857, 860 (9th Cir.1995) (holding that superintendent was state agent entitled to Eleventh Amendment immunity). Thus, Plaintiffs' § 1983 claim is also dismissed against Defendant Eastin.

Additionally, dismissal of this claim against MBUSD is warranted because as a school district, MBUSD is an arm of the state entitled to sovereign immunity. *Belanger,* 963 F.2d at 254. As the governing body of MBUSD, the Board of Trustees is also an arm of the state and enjoys Eleventh Amendment immunity from Plaintiffs' § 1983 claim. In their Supplemental Opposition, Plaintiffs concede that they cannot maintain a § 1983 cause of action against MBUSD or its Board of Trustees. *See Pl.s' Supp.Mem.P. & A.* at 5.

Plaintiffs have sued Individual Defendants both in their official and individual capacities under § 1983 for retrospective and prospective relief. As school district officials, Individual Defendants are "state" officials and thus are "persons" within the meaning of ¶ 1983. The Eleventh Amendment does not bar Plaintiffs' 1983 claim against Individual Defendants.

Plaintiffs' § 1983 claim against State and Local Defendants is barred by the Eleventh Amendment and hereby **DISMISSED with prejudice** pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.

#### b. Exhaustion of Administrative Remedies

Although the Eleventh Amendment does not bar Plaintiffs from asserting a § 1983 claim against Individual Defendants for alleged IDEA violations, it is not automatic that the Court has subject matter jurisdiction over the claim. There is a split of authority as to whether a plaintiff must exhaust administrative remedies under the

IDEA before bringing an IDEA-based § 1983 action. The IDEA, as amended by Congress, states that the statute's provi-. sions are not the sole means for redress available to disabled children and their parents. 20 U.S.C. § 1415(*l*).[7] The statute requires, however, that a plaintiff exhaust administrative remedies before bringing a civil action under another federal law when the plaintiff seeks relief that is also available under the IDEA: "[T]he procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter." *Id.*

The minority approach, adopted by the Third Circuit, reasons that the converse of the plain language in § 1415(*l*) does not require exhaustion where a plaintiff seeks relief that is not available under the IDEA. This is because the administrative pursuit of a remedy not available under the IDEA would render exhaustion futile. *See W.B. v. Matula,* 67 F.3d 484, 496 (3d Cir.1995).

The majority approach, adopted by the Tenth Circuit, requires a plaintiff to exhaust administrative remedies despite the plaintiff's contemporaneous assertion of a § 1983 claim for damages. *See Doe v. Alfred,* 906 F.Supp. 1092, 1098 (S.D.W.Va. 1995).

Although the Ninth Circuit has not explicitly adopted either approach, language in a recent Ninth Circuit opinion seems to suggest that the Ninth Circuit favors the minority approach. In *Witte v. Clark County Sch. Dist.,* 197 F.3d 1271 (9th Cir. 1999), a disabled student brought an action under the IDEA in federal court against

the school district and various school district officials for monetary damages associated with physical injuries school officials inflicted upon him. The court concluded that because the plaintiff only sought retrospective monetary damages, "which is not 'relief that is available under' the IDEA, and because all educational issues already have been resolved to the parties' mutual satisfaction through the IEP process, Plaintiff is not 'seeking relief that is also available' under the IDEA [citation omitted]. That being so, under the *plain words of the statute,* exhaustion of administrative remedies is not required." *Id.* at 1275 (citing *W.B. v. Matula,* 67 F.3d 484, 495 (3d Cir.1995)) (emphasis added).

A district court case from this district explicitly adopted the minority approach as set forth by the Third Circuit in *W.B. v. Matula,* but limited its holding to situations in which there is *no* administrative remedy for the wrong suffered. In *Plasencia v. State of California,* 29 F.Supp.2d 1145 (C.D.Cal.1998), a ward brought an action in federal court to challenge conditions of confinement. The plaintiff asserted various claims, including a claim for damages under § 1983 for alleged violations of the IDEA. The court acknowledged the Third Circuit's "plain language" approach to the exhaustion requirement in § 1983 suits for damages premised upon IDEA violations, but noted that the rationale for the Third Circuit's decision sanctioned waiver of exhaustion of administrative remedies only where there is *no* administrative remedy for a wrong that the plaintiff has suffered. *Plasencia,* 29 F.Supp.2d at 1150.[8]

---

**7.** 20 U.S.C. § 1415(*l*) states:

Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, ..., or other Federal laws protecting the rights of children with disabilities....

**8.** In *Matula,* the Third Circuit excused the plaintiffs from the exhaustion requirement because the parties in that case were bound by their settlement agreement, which provided for rights available to the plaintiffs under the IDEA. *Matula,* 67 F.3d at 496. The Third Circuit further stated that waiver of the ex-

haustion requirement would also be permitted where the parents of a deceased child seek damages for a school board's failure to provide IDEA services to the child while the child was still alive. *Id.* In both of these situations, the plaintiffs have no administrative remedy for the alleged wrong. The court noted that such narrow exceptions to the general exhaustion requirement would be "rare indeed"; thus, as the *Plasencia* court remarked, exhaustion cannot be waived whenever a plaintiff seeks monetary damages under § 1983 for alleged IDEA violations because there might exist other administrative

**1200**

In the case at bar, Plaintiffs seek various forms of relief for their § 1983 claim, including money damages against Individual Defendants, declaratory and injunctive relief against all Defendants, compensatory damages against Local Defendants limited to reimbursement of up to sixteen weeks of private instruction Student has received (at a rate of $1300 per week) and reimbursement of all costs incurred to transport Student daily to and from the offices where he receives private instruction (from Manhattan Beach to Rolling Hills Estates). Plaintiffs also seek compensatory education related to Student's socialization deficits; specifically, they request the Court to order Local Defendants to provide Student with an additional year of social skills modeling and instruction by a nonpublic agency. *Complaint* ¶¶ 1–5.2.

In their Opposition, Plaintiffs contend that resorting to administrative remedies for their § 1983 claim would offer inadequate relief because the money damages Plaintiffs seek under § 1983 are not available under the IDEA or CDE compliance procedures. On this basis, Plaintiffs claim they are excused from exhausting administrative remedies before pursuing a § 1983 claim to enforce the SEHO's order.

With the exception of the request for monetary damages against the Individual Defendants, the other forms of relief Plaintiffs seek under § 1983 are available under the IDEA and the CDE has authority to fashion such relief.[9] Although monetary damages are arguably not available under the IDEA,[10] the Court finds the rationale of *Plasencia* persuasive. Plain-

tiffs have requested other forms of relief for their § 1983 claim that are available under the administrative scheme of the IDEA; thus, it is not the case that Plaintiffs here have no administrative remedy. Moreover, were the Court to conclude that Plaintiffs may bring a § 1983 claim in this Court based on the unavailability of monetary damages in an administrative proceeding, plaintiffs could routinely circumvent exhaustion requirements by simply asserting an IDEA-based § 1983 claim for damages in similar cases.

Plaintiffs must exhaust administrative remedies before coming to this Court to assert their § 1983 cause of action. Accordingly, Plaintiffs' § 1983 claim against Individual Defendants is hereby **DISMISSED without prejudice** under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.

### 3. State Law Claims

With the dismissal of Plaintiffs' IDEA and § 1983 claims, there remains no jurisdictional basis to which Plaintiffs' state law claims can attach. Therefore, the Court hereby **DISMISSES** each of Plaintiffs' state law claims.

### V. CONCLUSION

Plaintiffs have not exhausted their administrative remedies before filing this action. Furthermore, they have not shown that pursuit of administrative remedies to redress the alleged wrongs would be inadequate or futile. The supervisorial role that a Special Master would play is the type of relief that the IDEA contemplates in its comprehensive administrative

---

remedies available to the plaintiff directly under the IDEA. *Plasencia,* 29 F.Supp.2d at 1150.

**9.** That is, the CDE may order the declaratory and injunctive relief Plaintiffs seek, it may authorize reimbursement for expenses incurred for Student's private instruction, and it may fashion compensatory education for Student. *See* 5 C.C.R. § 4600 *et seq.*

**10.** At least one court has concluded that compensatory damages are available in direct

IDEA actions. *See Emma C. v. Eastin,* 985 F.Supp. 940, 945 (N.D.Cal.1997). Other courts have stated that monetary damages are not available in such actions because they are not provided for in the IDEA, itself, and the hearing officer lacks the authority to grant such relief. *See, e.g., Witte v. Clark County Sch. Dist.,* 197 F.3d 1271, (9th Cir.1999) (noting that monetary damages are not available in IDEA administrative proceedings); *W.B. v. Matula,* 67 F.3d 484, 496 (3d Cir.1995) (same).

scheme and that the CDE provides in the regulatory scheme set forth in California Education Code section 56000 *et seq.* and in Title 5, Division 1 of the California Code of Regulations.

Second, the exhaustion requirement of the IDEA is not waived simply by virtue of asserting a claim for monetary damages under 42 U.S.C. § 1983 based on the alleged IDEA violation. Although monetary damages are not available in IDEA administrative proceedings, Plaintiffs have included in their Prayer additional forms of relief that are available under the IDEA's administrative remedial scheme. Thus, Plaintiffs must exhaust their administrative remedies before asserting a § 1983 action in this Court.

Finally, State and Local Defendants enjoy Eleventh Amendment immunity from Plaintiffs' § 1983 cause of action.

The Court lacks subject matter jurisdiction over the instant action. Accordingly, the Court hereby **GRANTS** Defendants' Motions to Dismiss:

1. Plaintiffs' cause of action under the IDEA is hereby **DISMISSED without prejudice** as against all Defendants pursuant to Rule 12(b)(1) for failure to exhaust administrative remedies.

2. Plaintiffs' claim under 42 U.S.C. § 1983 is hereby **DISMISSED with prejudice** as against State and Local Defendants based on their immunity under the Eleventh Amendment.

3. Plaintiffs' claim under 42 U.S.C. § 1983 is hereby **DISMISSED without prejudice** as against Individual Defendants pursuant to Rule 12(b)(1) for failure to exhaust administrative remedies.

4. Plaintiffs' state law claims are hereby **DISMISSED** in their entirety for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**