307 F.3d 1064
 Dashiel PORTER, by and through his Guardian ad Litem Deborah Blair PORTER; John Porter, an individual; Deborah Blair Porter, an individual, Plaintiffs-Appellants,
v.
BOARD OF TRUSTEES OF MANHATTAN BEACH UNIFIED SCHOOL DISTRICT; Manhattan Beach Unified School District; Gerald F. Davis, in his Official Capacity as Superintendent of Manhattan Beach Unified School District; Linda M. Jones, individually; Linda M. Jones, in her Official Capacity as Director of Pupil Personnel Services of Manhattan Beach Unified School District; Board of Education of the State of California; California Department of Education; Delaine Eastin, in her Official Capacity as State Superintendent of Public Instruction for the State of California; Gerald F. Davis, individually, Defendants-Appellees.
 No. 01-55032.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 4, 2002.
 Filed October 8, 2002.
 
 Steven M. Wyner, Manhattan Beach, CA, for the plaintiffs-appellants.
 Andrew V. Arczynski, Filarsky & Watt, Ojai, CA, for the defendants-appellees Board of Trustees of Manhattan Beach Unified School District and Manhattan Beach Unified School District.
 John W. Allen, Gibeaut, Mahan & Briscoe, Los Angeles, CA, for the defendants-appellees Linda M. Jones and Gerald F. Davis.
 Allan H. Keown, Deputy General Counsel, California Department of Education, Sacramento, California, for the defendants-appellees Board of Education of the State of California, California Department of Education and Delaine Eastin.
 Mark L. Gross and Seth M. Galanter, United States Department of Justice Civil Rights Division, Washington, D.C., for the amicus United States of America.
 Appeal from the United States District Court for the Central District of California; Ronald S.W. Lew, District Judge, Presiding. D.C. No. CV-00-08402-RSWL.
 Before: HAWKINS and FISHER, Circuit Judges, WEINER, District Judge.*
 FISHER, Circuit Judge.
 
 
 1
 The plaintiffs, a child with a disability and his parents, filed this suit under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and 42 U.S.C. § 1983. They allege that the failure of the defendants to implement the directives of an order issued as a result of an IDEA due process hearing denied Dashiel Porter a free appropriate public education. The district court dismissed the complaint for want of jurisdiction, ruling that plaintiffs were required to exhaust California's complaint resolution process before suit. We hold that (1) further exhaustion of California's due process procedures enacted to comply with § 1415 of the IDEA would be futile, (2) the plaintiffs were not required to exhaust California's complaint resolution procedure and (3) the district court erred in dismissing the plaintiffs claims for prospective injunctive relief against the state defendants based on Eleventh Amendment immunity.
 
 I.
 A. Statutory and regulatory background.
 
 2
 In 1975, finding that more than half of the nation's eight million children with disabilities were not receiving appropriate educational services, Congress appropriated federal funds for state special education programs and made them available on the condition that states implement policies assuring a "free appropriate public education," sometimes referred to as a "FAPE," for all children with disabilities. 20 U.S.C. § 1412(a) (establishing right to a free appropriate public education); id. § 1400(c) (congressional findings). Known then as the Education of All Handicapped Children Act ("EHA"), and today named the Individuals with Disabilities Education Act or IDEA, the law "confers upon disabled students an enforceable substantive right to public education in participating States, and conditions federal financial assistance upon a State's compliance with the substantive and procedural goals of the Act." Honig v. Doe, 484 U.S. 305, 310, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (citation and footnote omitted); see also Bd. of Educ. v. Rowley, 458 U.S. 176, 188-89, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (holding that the EHA established right to public education for students with disabilities that "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child `to benefit' from the instruction").
 
 
 3
 Among the most important of the IDEA's goals is the protection of "parents' right to be involved in the development of their child's educational plan." Amanda v. Clark County Sch. Dist., 267 F.3d 877, 882 (9th Cir.2001). Toward this end, participating states are required to establish procedures giving parents "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). After making their complaint, parents are entitled to "an impartial due process hearing." Id. § 1415(f). A decision of the due process hearing "shall be final," id. § 1415(i)(1)(A), except that "[a]ny party aggrieved by the findings and decision ... shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States." Id. § 1415(i)(2)(A). These procedures, including the available appeal, must be explained to parents in writing upon the filing of an administrative complaint. Id. § 1415(d).
 
 
 4
 California adopted legislation to comply with IDEA's due process hearing requirements. Cal. Educ.Code §§ 56500-56507. Under state law, a parent may initiate a due process hearing regarding the provision of a free appropriate public education for a child and that hearing will be conducted "at the state level." Id. at § 56501(a), (b)(4).[1] The decision of the hearing officer "shall be the final administrative determination and binding on all parties" unless a party "exercis[es] the right to appeal the decision to a court of competent jurisdiction ... within 90 days of receipt of the hearing decision." Id. § 56505(g), (i).
 
 
 5
 Distinct from the IDEA's due process requirements, the U.S. Department of Education promulgated regulations pursuant to its general rulemaking authority requiring each recipient of federal funds, including funds provided through the IDEA, to put in place a complaint resolution procedure ("CRP"). 34 C.F.R. §§ 300.660-300.662 (citing 20 U.S.C. § 1221e-3 as authority for rules); Lucht v. Molalla River Sch. Dist., 225 F.3d 1023, 1029 (9th Cir.2000).[2] The regulations require each state education agency to adopt written procedures for "[r]esolving any complaint" regarding the education of a child with a disability. 34 C.F.R. § 300.660(a). The regulations permit a complaint to be filed with both the CRP and the IDEA due process hearing system, in which case the CRP must await the due process hearing's resolution of overlapping issues, which is then binding in the CRP. Id. § 300.661(c). The regulations state further that the CRP must resolve a complaint alleging a public agency's failure to implement a due process decision. Id. § 300.661(c)(3). The regulations do not, however, state that a parent must exhaust the CRP to enforce a due process decision in court.
 
 
 6
 To comply with the Department's regulations regarding the establishment of a CRP, California established "a uniform system of complaint processing for specified programs or activities which receive state or federal funding." Cal.Code Regs. tit. 5, § 4610(a). These regulations authorize the state Superintendent of Public Instruction to investigate and attempt to resolve any complaint alleging a violation of the IDEA, including a complaint that "alleges that the local educational agency... fails or refuses to comply with the [IDEA] due process procedures ... or has failed or refused to implement a due process hearing order." Id. § 4650(a)(viii)(B). In such circumstances, the Superintendent shall offer to mediate the dispute and must resolve any remaining issues within 60 days of the receipt of the complaint, absent exceptional circumstances. Id. §§ 4660, 4662. Upon determination that a local agency is in violation of federal or state law, including violation of a due process hearing order, "the Superintendent shall notify the local agency of the action he or she will take to effect compliance," and "may use any means authorized by law to effect compliance," including withholding fiscal support and proceeding in a court of competent jurisdiction for an appropriate order compelling compliance. Id. § 4670. California's regulations do not state that the CRP process must be exhausted prior to suit under the IDEA and the CRP is not listed in the description of IDEA due process procedures that California provides to parents upon the filing of an administrative complaint.
 
 
 7
 B. Factual and procedural background.
 
 
 8
 Dashiel Porter is an autistic child, born in 1987. He was found eligible for special education when he was three years old. On June 30, 1999, responding to a complaint filed by his parents, Deborah and John Porter, California's Special Education Hearing Office ("SEHO") found that Dashiel had significant educational deficiencies resulting from the failure of the Manhattan Beach Unified School District ("MBUSD") to provide Dashiel a free appropriate public education. Based on this finding, the SEHO ordered the MBUSD and its Board of Trustees (together, "Local Defendants") to provide Dashiel with compensatory education during the 1999-2000 school year.
 
 
 9
 During the course of the 1999-2000 school year, MBUSD officials held a series of meetings with the Porters, but MBUSD never implemented a full compensatory education program. Instead, the Porters hired a private tutor for Dashiel at their own expense. On August 7, 2000, the Porters filed the complaint initiating this action, listing as defendants: the Local Defendants; Gerald F. Davis, Superintendent of the MBUSD, and Linda M. Jones, Director of Pupil Personnel Services for the MBUSD (together, "Individual Defendants"); and the Board of Education of the State of California, the California Department of Education and Delaine Eastin, Superintendent of Public Instruction (collectively, "State Defendants"). The Porters sought relief, including an injunction and monetary damages, for violations of the IDEA and California law related to the failure of the Local and Individual Defendants to comply with the June 30 SEHO order.[3]
 
 
 10
 The district court dismissed the Porters' complaint, without prejudice, for lack of jurisdiction because they had not sought to enforce the SEHO order through California's CRP before filing suit. Based on Eleventh Amendment immunity, the court dismissed the § 1983 claim with prejudice as to the State and Local Defendants sued in their official capacities. The court determined that, with the dismissal of the IDEA and § 1983 claims, there remained no jurisdictional basis to hear the Porters' state law claims.
 
 
 11
 The Porters timely filed this appeal, challenging the dismissal of their IDEA and § 1983 claims with respect to their allegations that the defendants failed to comply with the June 30 SEHO order. Thus, they frame the primary issue in this appeal as whether they were required to exhaust California's CRP before filing an action under the IDEA and § 1983 to enforce a SEHO order that they allege was not fully implemented by the school district.[4] They also challenge the dismissal of their claims against the defendants based on Eleventh Amendment immunity to the extent that they seek injunctive relief.
 
 II.
 
 12
 We turn first to whether the Porters met the IDEA's administrative exhaustion requirements before filing this suit, answering this question in two parts. First, we examine whether the Porters exhausted California's due process procedures enacted to comply with § 1415 of the IDEA. Cal. Educ.Code §§ 56500-56507. Next, we examine whether the Porters were required to exhaust California's CRP process in addition to exhausting its due process procedures. The application of the IDEA's statutory exhaustion requirement is predominantly a question of law that we review de novo. Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1303 (9th Cir.1992).
 
 A.
 
 13
 The IDEA creates a "right, enforceable in federal court, to the free appropriate public education required by the statute." Smith v. Robinson, 468 U.S. 992, 1002 n. 6, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), superseded by statute on other grounds by Pub.L. No. 99-372, 100 Stat. 796 (1986); accord Honig, 484 U.S. at 310, 108 S.Ct. 592 (describing the right to a free appropriate public education as "an enforceable substantive right"). Before bringing a suit based on a violation of this right, a complainant must normally exhaust the due process hearing procedures required by 20 U.S.C. § 1415.[5] The IDEA's exhaustion requirement applies to suits under "other Federal laws protecting the rights of children with disabilities ... seeking relief that is also available under" the IDEA. 20 U.S.C. § 1415(l). The exhaustion requirement is not, however, a rigid one. Hoeft, 967 F.2d at 1302-03. "Courts universally recognize that parents need not exhaust the procedures set forth in 20 U.S.C. § 1415 where resort to the administrative process would be either futile or inadequate." Id. at 1303; see also Honig, 484 U.S. at 327, 108 S.Ct. 592; Kerr Ctr. Parents Ass'n v. Charles, 897 F.2d 1463, 1470 (9th Cir.1990).
 
 
 14
 Here, the Porters exhausted California's due process procedure regarding their initial complaint, receiving a SEHO order in their favor.[6] Neither they nor the MBUSD appealed that order to a court of competent jurisdiction. Accordingly, the order was final and binding under the IDEA and state law. 20 U.S.C. § 1415(i)(1)(A); Cal. Educ.Code § 56505(g), (i).
 
 
 15
 There is no dispute that the IDEA required the implementation of the final decision of the SEHO. See Robinson v. Pinderhughes, 810 F.2d 1270, 1274 (4th Cir.1987) (holding that IDEA's procedural requirements "can only be fairly construed to contemplate that once a final favorable administrative decision has been gained by a plaintiff, the State will carry out that decision although it may have opposed the position of the plaintiff in the administrative proceedings"); see also Jeremy H. v. Mount Lebanon Sch. Dist., 95 F.3d 272, 279 n. 13 (3rd Cir.1996) ("[I]t [would] be curious for Congress to have established section 1415's detailed procedural apparatus solely in order to generate advisory opinions.").[7] It is also clear that it would be futile to bring a complaint to the SEHO alleging the failure to implement a due process hearing order given our decision in Wyner v. Manhattan Beach Unified Sch. Dist., 223 F.3d 1026 (9th Cir.2000), that the SEHO lacks jurisdiction to enforce its own orders. Thus, we conclude that the Porters' complaint alleges a violation of the IDEA for which further exhaustion of the procedures set forth in § 1415 would be futile or inadequate, allowing them to bring their claim directly to court.
 
 B.
 
 16
 Defendants argue that the futility of California's due process procedure for resolving the Porters' complaint does not end the Porters' exhaustion requirements, because the state's CRP is available to enforce the SEHO order. Thus, the defendants argue, the Porters must exhaust that process before bringing a court action.
 
 
 17
 The district court accepted the defendants' argument, requiring the exhaustion of California's CRP without finding that Congress intended such exhaustion. Cf. McCarthy v. Madigan, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) ("Where Congress specifically mandates, exhaustion is required."). It noted our decision in Wyner that the SEHO does not have jurisdiction to enforce its own orders but that California's CRP provides an avenue to enforce those decisions. The district court assumed "technically correct," however, the Porters' argument that Wyner did not make resort to the CRP obligatory but rather held only "that issues of non-compliance with an SEHO order may be brought before the [CRP]." Porter, 123 F.Supp.2d at 1196 (emphasis in original). The district court nonetheless found that exhaustion of the CRP is "preferable" in light of policies that generally favor exhaustion. Id.
 
 
 18
 Although there is some merit in encouraging resort to the CRP to allow California to correct problems before litigation and to further develop administrative records for judicial review, we conclude that the district court erred in basing its exhaustion determination on a policy analysis independent of the IDEA's requirements. If a statute does not provide for exhaustion of administrative remedies, a district court may require exhaustion in the exercise of its discretion. Hoeft, 967 F.2d at 1302. "The IDEA, however, does provide administrative appeal procedures to be pursued before seeking judicial review." Id.; see 20 U.S.C. § 1415. Where Congress has provided for the exhaustion of administrative procedures, Congress' intent "is of paramount importance ... because Congress is vested with the power to prescribe the basic procedural scheme under which claims may be heard in federal courts." Patsy v. Bd. of Regents, 457 U.S. 496, 501, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Accordingly, our inquiry is not whether general policies favor requiring the exhaustion of California's CRP, but whether requiring such exhaustion would be consistent with IDEA's procedural scheme.
 
 1.
 
 19
 Our starting point is the text of the IDEA. When Congress provides a "detailed exhaustion scheme," courts generally lack discretion to add additional exhaustion requirements to the scheme. Patsy, 457 U.S. at 509-511, 102 S.Ct. 2557 (holding that detailed exhaustion scheme of the Civil Rights of Institutionalized Persons Act ("CRIPA") "is inconsistent with discretion to impose, on an ad hoc basis, a judicially developed exhaustion rule in other cases"); see also Darby v. Cisneros, 509 U.S. 137, 146-47, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993) (holding that it would be inconsistent with Congress' intent to require exhaustion of "optional appeals" through state procedures after "an aggrieved party has exhausted all administrative remedies expressly prescribed" by Congress in the Administrative Procedures Act ("APA")).
 
 
 20
 The exhaustion scheme provided in § 1415 of the IDEA establishes "elaborate and highly specific procedural safeguards," evidencing that "Congress placed every bit as much emphasis upon compliance with procedures ... as it did upon the measurement of the resulting IEP against a substantive standard." Rowley, 458 U.S. at 205, 102 S.Ct. 3034. Like that under the APA or the CRIPA, the IDEA's exhaustion scheme was carefully designed to balance the individual complainant's interest in retaining prompt access to a judicial forum and the countervailing institutional interests favoring exhaustion. See Hoeft, 967 F.2d at 1303 (discussing policies served by the IDEA's exhaustion requirement); cf. McCarthy, 503 U.S. at 145-149, 112 S.Ct. 1081 (describing the balance of interests applicable in exhaustion determinations). Courts therefore may not, consistent with the intent of Congress, impose exhaustion requirements that "merely add additional steps not contemplated in the scheme of the Act." Antkowiak v. Ambach, 838 F.2d 635, 641 (2nd Cir.1988) (holding that state could not conduct sua sponte review of unappealed due process hearing order); Diamond v. McKenzie, 602 F.Supp. 632, 639 (D.D.C.1985) (holding that state may not "subject children and their parents to an additional step not required by the EHA").
 
 
 21
 Requiring exhaustion of California's CRP to file suit based on a failure to implement an unappealed administrative order would add an additional step of administrative exhaustion not contemplated by the IDEA. Once a due process hearing issues an order that is not appealed by either party, the IDEA requires that the order be treated as "final." 20 U.S.C. § 1415(i)(1)(A). No other administrative procedures are required to be exhausted. This clear congressional demarcation of an end point to the due process procedures weighs heavily in our conclusion that Congress did not intend to allow states to add additional exhaustion requirements not identified in the statute.
 
 2.
 
 22
 We are not aware of any court that has held that the IDEA requires exhaustion of a state's CRP in addition to exhaustion of the due process hearing system before filing suit for violations of the IDEA. The Second and Third Circuits have rejected such claims.
 
 
 23
 In Mrs. W. v. Tirozzi, 832 F.2d 748 (2d Cir.1987), the Second Circuit rejected the argument by the State of Connecticut that once its CRP apparatus was invoked it must be exhausted prior to commencing a § 1983 action to enforce a right under the IDEA's precursor, the EHA. The court explained:
 
 
 24
 Significantly, § 1415(f) does not specify, directly or by incorporating its legislative history, exhaustion of possible CRP remedies. In fact, research has unearthed no statute or regulation that requires exhaustion of CRP remedies prior to commencing a § 1983 action based on alleged EHA violations.... Turning to the EHA caselaw, we note that the Supreme Court has never suggested that the CRP need to be invoked or exhausted prior to seeking federal court involvement in construing the EHA pursuant to § 1415.
 
 
 25
 Id. at 758.
 
 
 26
 In a more recent case, the Third Circuit refused to require CRP exhaustion under facts very similar to those at issue here. In Jeremy H., the plaintiffs, like the Porters, brought an action under § 1983 and the IDEA to enforce the decision of a due process hearing that the local education agency refused to implement. 95 F.3d at 274. Like the defendants here, the defendants in Jeremy H. argued that the plaintiffs' effort to enforce the decision of the state administrative proceeding must be exhausted through the state's CRP, which had the authority to order compliance with the due process order. Id. at 282. The Third Circuit rejected this argument, finding no legal authority under which a court might require CRP exhaustion. Id. at 283. "Indeed," remarked the court, "the text of [the CRP regulations], and the various statements made in the Federal Register as they took their present shape, both evince an expectation that invocation of the complaint procedures they establish will be elective, not mandatory." Id.[8]
 
 
 27
 We presume that when Congress amends a statute, it is knowledgeable about judicial decisions interpreting the prior legislation. United States v. Hunter, 101 F.3d 82, 85 (9th Cir.1996). The IDEA was last amended in 1997. Individuals with Disabilities Education Act Amendments for 1997, Pub.L. No. 105-17, 111 Stat. 37. Despite the holdings of the Second and Third Circuits that complainants need not exhaust a state's CRP before suit to enforce IDEA rights, including in a suit to enforce a due process hearing order, Congress did not include a CRP exhaustion requirement in these subsequent amendments. Thus, we infer that Congress did not intend a different interpretation of the scheme it enacted in the IDEA.
 
 3.
 
 28
 It is additionally highly relevant that the U.S. Department of Education has never interpreted its CRP regulations as creating a mandatory step before suit alleging an IDEA violation. Because the CRP "is a creature of the [Department's] own regulations, [its] interpretation of it is, under our jurisprudence, controlling unless `plainly erroneous or inconsistent with the regulation.'" Auer v. Robbins, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (quoting Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 359, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989)). According to the Department, the CRP is intended to "allow [parents and school districts] to resolve differences without resort to more costly and litigious resolution through due process," not to create a mechanism that must be exhausted in addition to the due process system. Assistance to States for the Education of Children With Disabilities, 64 Fed.Reg. 12,406, 12,646 (March 12, 1999) (comment) (emphasis added); see also Office of Special Education Programs Memorandum 00-20 (July 17, 2000) ("OSEP Memorandum 00-20") (describing CRP regulations as attempt to provide "a less costly and more efficient mechanism for resolving disputes than the impartial due process hearing system"); cf. Lucht, 225 F.3d at 1028-29 (describing CRP regulations). The Department has repeatedly instructed that parents are "not required to use [the CRP]... in addition to the due process hearing system." OSEP Memorandum 00-20; see also Letter from Office of Special Education Programs to Johnson, 18 Ind. Disab. Educ. L. Rep. 589, 590 (Dec. 4, 1991) (explaining that "[t]he due process and [CRP] procedures are two separate, distinct, or independent remedies"). We can find nothing to counter the argument made by the government as amicus in this case that requiring the exhaustion of CRP procedures to bring an action in court to enforce the order of a due process hearing would be directly contrary to the U.S. Department of Education's reasonable interpretation of its own regulations.
 
 4.
 
 29
 Finally, although we do not question that in appropriate circumstances a district court may have the discretion to stay the proceedings before it pending resolution of a complaint filed with a CRP, requiring exhaustion of California's CRP as a condition to suit would be inconsistent with the IDEA's enforcement scheme. The final step in California's CRP is not, as under the IDEA's due process procedures, the authorization of a lawsuit by a dissatisfied complainant. Under California's CRP, if the local school district refuses to comply with the state's directives, only the Superintendent of Public Instruction is authorized to bring an action to enforce the CRP order. Cal.Code Regs. tit. 5, § 4670. Thus, to require exhaustion of the CRP would transfer the initiative for bringing an enforcement action from the parents of the disabled child to the state. The other enforcement measure available under the CRP — withholding fiscal support from the school, id. — is also dependent on the initiative of the state and is additionally lacking as an adequate remedy under the IDEA because "the fact remains that it would be contrary to plaintiffs' interests to petition for the withholding of ... funds from the [school district]. Plaintiffs want [the district's] handicapped education program implemented, not dismantled." Mrs. W., 832 F.2d at 758; accord Hoekstra v. Indep. Sch. Dist., 916 F.Supp. 941, 945 (D.Minn.), aff'd, 103 F.3d 624 (8th Cir.1996). Accordingly, in light of the text of the IDEA, the case law interpreting it, the Department's regulations and interpretations of them and the structure of the IDEA's enforcement scheme, we hold that the IDEA does not require exhaustion of California's CRP in addition to exhaustion of its due process procedures.
 
 5.
 
 30
 None of our prior cases discussing a CRP requires a contrary result. In Hoeft, we stated that on a case by case basis, district courts may choose to require or to accept exhaustion of the CRP "as a substitute for exhausting IDEA procedures in challenges to facially invalid policies." 967 F.2d at 1308 (emphasis added). That statement followed our holding that complainants are not automatically excepted from all exhaustion requirements where they allege a facial violation of the IDEA by a local school district. Id. at 1307. We stated that exhaustion is required even though due process hearing officers are not authorized to adjudicate questions of statutory compliance because "administrative exhaustion may be necessary to give the state a reasonable opportunity to investigate and correct such policies." Id. In accord with this rationale, we suggested that the filing of a CRP complaint may be sufficient to meet the exhaustion requirement "where the only purposes served by exhaustion are to notify the state of local noncompliance and to afford it an opportunity to correct the problem." Id. at 1308.
 
 
 31
 Our statement in Hoeft that the CRP may serve as a substitute for due process system exhaustion is consistent with the traditional exception to exhaustion requirements based on futility or inadequacy. See Honig, 484 U.S. at 327, 108 S.Ct. 592. Where the challenge is to a facially invalid policy, and the state refuses to alter the policy after a CRP complaint, then further exhaustion may be excused because "the administrative body is shown to be biased or has otherwise predetermined the issue before it." McCarthy, 503 U.S. at 148, 112 S.Ct. 1081. Exhaustion of a CRP may also render the due process hearing futile where all the educational issues are resolved, leaving only issues for which there is no adequate administrative remedy. See Witte v. Clark County Sch. Dist., 197 F.3d 1271, 1275-76 (9th Cir.1999). Thus, we agree with the statement in Hoeft that there may be instances when exhaustion of the CRP may be a substitute for exhaustion of the due process hearing. Cf. Office of Special Education Programs Memorandum 94-16, 21 Disab. Educ. L. Rep. 85 (March 22, 1994) (describing the CRP regulations as establishing a process that may be used "in lieu of the due process hearing system"). Hoeft did not, however, state that a district court may require exhaustion of a CRP in addition to exhaustion of the due process hearing procedures.
 
 
 32
 Neither is our decision in Wyner contrary to our holding. In Wyner we held that California's SEHO does not have jurisdiction to hear a complaint alleging failure to comply with an order from a prior due process hearing. 223 F.3d at 1029. We explained that California's CRP "was intended to address compliance claims," providing an administrative remedy for enforcement of a SEHO decision. Id. As we have gone to some length to explain, exhaustion of an administrative enforcement mechanism is not required because of its mere existence. Whether an existing procedure must be exhausted turns on an inquiry into congressional intent. We did not need to engage in that inquiry in Wyner.
 
 
 33
 Nor does our statement in Wyner that California's CRP regulations "were promulgated to ensure compliance with the IDEA," id., require us to hold that the CRP procedures are part of the due process system that must be exhausted before suit. Our view that the CRP is part of the means by which a state complies with the IDEA comports with that of the U.S. Department of Education, which views its CRP regulations as establishing a process "critical to each State's ... general supervision responsibilities" under 20 U.S.C. § 1412. OSEP Memorandum 00-20. The state's supervision responsibilities are independent of its responsibilities to establish a due process procedure that must be exhausted before suit. See 20 U.S.C. § 1415(f), (i). Nothing in the IDEA or its legislative history requires a complainant to exhaust every procedure established by a state that is consistent with its supervision responsibilities under the IDEA. Only § 1415 procedures are required to be exhausted prior to suit. Because the Porters exhausted California's procedures adopted pursuant to § 1415 to the point of their futility, they were authorized to bring their complaint alleging an IDEA violation directly to court.
 
 III.
 
 34
 The Porters also challenge the district court's dismissal of their claims against the defendants with prejudice based on Eleventh Amendment immunity, to the extent that they seek injunctive relief against officers who acted outside the bounds of their authority. We agree that the district court erred in this regard. "It is well established that the Eleventh Amendment does not bar a federal court from granting prospective injunctive relief against an officer of the state who acts outside the bounds of his authority." Cerrato v. San Francisco Comty. Coll. Dist., 26 F.3d 968, 973 (9th Cir.1994); see also Ex parte Young, 209 U.S. 123, 159-60, 28 S.Ct. 441, 52 L.Ed. 714 (1908).
 
 IV.
 
 35
 We hold that the Porters were not required to exhaust California's CRP before suit. We hold further that the district court erred in dismissing with prejudice the Porters' claims for prospective injunctive relief against the defendants acting outside the bounds of their authority. We therefore reverse the decision of the district court, and remand for further proceedings consistent with this opinion.[9]
 
 
 36
 REVERSED AND REMANDED.
 
 
 
 Notes:
 
 
 *
 The Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 California's hearing system is known as a "one tier" system because the initial hearing is conducted by the state education agency. In a "two-tier" hearing system, the initial hearing is conducted by the local education agency, the decision of which either party may appeal to the state education agency. 20 U.S.C. § 1415(g)
 
 
 [2]
 The regulations originated as part of the Education Department General Administrative Regulations ("EDGAR")
 
 
 [3]
 A fuller description of the facts is included in the district court's published opinion,Porter v. Manhattan Beach Unified Sch. Dist., 123 F.Supp.2d 1187, 1191-92 (C.D.Cal.2000).
 
 
 [4]
 We reject the defendants' contention that this appeal is moot because, concurrent with the Porters' appeal of the district court's order, the Porters filed a complaint with California's CRP, which subsequently ordered the MBUSD to comply with the SEHO order and to take corrective action. According to the Porters, the MBUSD is still not providing the full range of compensatory education services the SEHO order, and now the CRP order, require. Assuming this allegation of fact is true, we cannot dismiss the Porters' complaint as moot
 
 
 [5]
 The IDEA instructs courts to "receive the records of the administrative proceedings"; "hear additional evidence at the request of a party"; and "grant such relief as the court determines is appropriate" based on a preponderance of the evidenceId. § 1415(i)(2)(B). In reviewing the decisions of due process hearings, we defer to their specialized knowledge and experience by giving "due weight" to their findings and conclusions. Amanda, 267 F.3d at 888.
 
 
 [6]
 The compliance of California's due process procedure with the IDEA is not at issue in this appeal
 
 
 [7]
 Nor do the parties dispute that the IDEA's right of action provides a proper means to enforce a due process hearing order; therefore we have no occasion to address the holding ofRobinson that only a § 1983 action can be used to enforce that order. 810 F.2d at 1274.
 
 
 [8]
 The court explained:
 The regulation's text provides only that "[a]n organization or individual may file a signed written complaint," 34 C.F.R. § 300.662 (emphasis added), not that an organization or individual must do so in order to bring a subsequent lawsuit.... [T]he 1991 notice of proposed rulemaking proposed adding a requirement (which has since been adopted) that "each State educational agency inform parents and other interested individuals about the availability of procedures in §§ 300.660-300.662." 56 Fed.Reg. 41,266 at 41,270. This language depicts the complaint procedure as "available," but not as obligatory. The explanatory materials accompanying the (second) final rulemaking, similarly, refer to a complainant's "right" to file a complaint, 57 Fed.Reg. 44,794 at 44,851, but not to an obligation to do so.
 Id. at n. 20.
 
 
 [9]
 Given this resolution, we need not decide the remaining questions raised by the Porters' opening brief