**v.**

**CHINO VALLEY UNIFIED SCHOOL DISTRICT, Defendant.**

**No. CV 12–1408 SS.**

United States District Court,
C.D. California.

May 10, 2013.

Drew D. Massey, Timothy A. Adams, Timothy Adams & Associates APLC, Santa Ana, CA, for Plaintiffs.

Jonathan Patrick Read, Fagen Friedman & Fulfrost, Tiffany Marie Santos, Fagen Friedman and Fulfrost LLP, San Marcos, CA, for Defendant.

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

SUZANNE H. SEGAL, United States Magistrate Judge.

## I.

## INTRODUCTION

On August 28, 2012, plaintiffs L.H. and B.H. ("Parents"), along with their minor child, M.H. ("Student") (collectively, "Plaintiffs"), filed a Complaint for attorneys' fees pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* ("Complaint," Dkt. No. 4). On August 29, 2012, Defendant Chino Valley Unified School District ("Defendant") filed a Motion to Dismiss. ("MTD," Dkt. No. 12). Plaintiffs filed an Opposition, including the Declaration of Roshni Gandhi and accompanying exhibits, on November 30, 2012. ("Gandhi Decl.," Dkt. No. 17). On the same day, Plaintiffs filed a Request for Judicial Notice. ("RJN," Dkt. No. 18). On December 20, 2012, Plaintiffs filed an Amended Opposition to the Motion to Dismiss correcting certain citation errors. ("Am. Opp.," Dkt. No. 21). On January 28, 2013, Defendant filed a Reply. ("Reply," Dkt. No. 26). On January 30, 2013, the Parties consented to proceed for all purposes before the undersigned Magistrate Judge. (Dkt. No. 27). On April 16, 2013, the Court held a hear-

ing on the Motion. For the reasons stated below, Defendant's Motion is GRANTED.

## II.

## OVERVIEW OF THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT

The IDEA provides federal funds to assist state and local agencies in educating children with disabilities. 20 U.S.C. § 1412; *R.P. ex rel. C.P. v. Prescott Unified School Dist.*, 631 F.3d 1117, 1121 (9th Cir.2011). The primary purpose of the IDEA is to provide all children with disabilities "a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for education, employment and independent living . . . ." 20 U.S.C. § 1400(d)(1)(A). This purpose is implemented in part through the development of individualized education programs ("IEP"), which are prepared by a team including the student's parents, teachers, and the local educational agency. 20 U.S.C. § 1414(d); *see also Lake Washington School Dist. No. 414 v. Office of Superintendent of Public Instruction*, 634 F.3d 1065, 1066 (9th Cir.2011) ("The IDEA's 'core' is the 'cooperative process that it establishes between parents and schools,' the 'central vehicle' of which is the development of an IEP.") (quoting *Schaffer v. Weast*, 546 U.S. 49, 53, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005)). Among other things, an IEP sets forth the student's short term objectives and annual goals, the specific services to be provided to the student, and criteria for measuring the student's progress. 20 U.S.C. § 1414(d). Pursuant to federal regulations implementing the IDEA, public agencies receiving IDEA funds are required to ensure that the IEP team reviews "the child's IEP periodically, but not less than annually, to determine whether the annual goals for the child are being achieved . . . ." 34 C.F.R. § 300.324(b)(1)(i).

In furtherance of its overall goals, "the IDEA requires that states enact procedural safeguards to guarantee parental involvement in decisions relating to the child's education and to ensure local compliance with the IDEA." *Christopher S. ex rel. Rita S. v. Stanislaus Cnty. Office of Educ.*, 384 F.3d 1205, 1209 (9th Cir.2004). As the Ninth Circuit has explained,

> To ensure parental involvement in educational decisions, the IDEA requires states to guarantee that parents of disabled students have the right to bring complaints "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." [20 U.S.C.] § 1415(b)(6). Any parent who brings such a complaint must have an opportunity for an impartial due process hearing conducted by the state or local educational agency. *Id.* § 1415(f). If the hearing is held by a state agency, as is the case in California, *see* Cal. Educ. Code § 56501(b)(4), any party dissatisfied with the result may file a civil action. 20 U.S.C. § 1415(i)(2)(A).

*Id.* at 1210; *see also Weissburg v. Lancaster School Dist.*, 591 F.3d 1255, 1257 n. 1 (9th Cir.2010) ("Under the IDEA, *any* party [including a local educational agency] may request a due process hearing when there is a dispute about the identification, evaluation, or educational placement of a child.") (emphasis in original); *Winkelman ex rel. Winkelman v. Parma City School Dist.*, 550 U.S. 516, 526, 127 S.Ct. 1994, 167 L.Ed.2d 904 (2007) (following an impartial due process hearing by the state educational agency, "an aggrieved party may commence suit in federal court").

"Distinct from the IDEA's due process requirements, the U.S. Department of Ed-

ucation promulgated regulations pursuant to its general rulemaking authority requiring each recipient of federal funds, including funds provided through the IDEA, to put in place a complaint resolution procedure ('CRP')." *Porter v. Board of Trustees of Manhattan Beach Unified School Dist.,* 307 F.3d 1064, 1067 (9th Cir.2002); *see also* 34 C.F.R. §§ 300.151–153. "The CRP is designed to provide parents and school districts with mechanisms that allow them to resolve differences without resort to more costly and litigious resolution through due process." *Lucht v. Molalla River School Dist.,* 225 F.3d 1023, 1028 (9th Cir.2000) (internal quotation marks omitted); *see also R.R. ex rel. R. v. Fairfax Cnty. School Bd.,* 338 F.3d 325, 331 n. 5 (4th Cir.2003) ("The CRP is an alternative method of addressing an IDEA grievance ...." ) (citing *Lucht* ). Under the CRP, parents, students and organizations may file a compliance complaint with the state educational agency when a "public agency has violated the IDEA." [1] *Lucht,* 225 F.3d at 1029; *see also* 34 C.F.R. § 300.153(b).

While the IDEA specifically provides for judicial appeal of an impartial due process hearing, 20 U.S.C. § 1415(i)(2)(A), neither the statute nor its implementing regulations expressly provide for appeals to district courts from CRP determinations, although courts have allowed such appeals.

*Morgan Hill Concerned Parents Assoc. v. California Dept. of Educ.,* 2013 WL 1326301 at \*2 (E.D.Cal. Mar. 29, 2013) (citing cases); *S.A. ex rel. L.A. v. Tulare County Office of Educ.,* 2009 WL 30298 at \*4 (E.D.Cal. Jan. 6, 2009) ("*S.A. I*" ); *see also Lucht,* 225 F.3d at 1025 (affirming district court's award of attorneys' fees following CRP proceeding). Furthermore, "[t]he final step in California's CRP is not, as under the IDEA's due process procedures, the authorization of a lawsuit by a dissatisfied complainant. Under California's CRP ... only the Superintendent of Public Instruction is authorized to bring an action to enforce a CRP order." *Porter,* 307 F.3d at 1073 (citing 5 Cal.Code Regs. § 4670).

Section 1415 of the IDEA provides in relevant part that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). "A prevailing party is one who 'succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'" *Weissburg,* 591 F.3d at 1258 (quoting *Van Duyn v. Baker Sch. Dist. 5J,* 502 F.3d 811, 825 (9th Cir.2007)). To be considered a "prevailing party," the com-

---

1. California's CRP regulations authorize the California Department of Education to "directly intervene" in response to a compliance complaint involving special education, including specifically violations of the IDEA. 5 Cal. Code Regs. § 4650(a)(7)(E). "When the Department determines that direct State intervention is warranted," the Department is required to "conduct an investigation ... into the allegations in the complaint." *Id.* § 4660(a). As part of the investigation, the complainant is afforded the opportunity to provide evidence or information leading to evidence to support the allegations of noncompliance. *Id.* § 4663(b). The local edu-

cational agency must provide access to records and/or other information related to the allegations; if it refuses, the Department may render its determination based solely on the complainant's evidence. *Id.* § 4662(c). At the conclusion of the investigation, the Department must issue a report setting forth its findings of facts, conclusions, and any specific required or recommended corrective actions, if applicable. *Id.* § 4664(a). Parties may request reconsideration of the Department's report by the Superintendent of Public Instruction within 35 days of receipt of the report. *Id.* § 4664(a)(9).

plaining party must achieve a " 'material alteration of the legal relationship of the parties' " and "that alteration must be 'judicially sanctioned.' " *P.N. v. Seattle School Dist.*, 474 F.3d 1165, 1172 (9th Cir. 2007) (quoting *Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 604–05, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)); *see also Shapiro v. Paradise Valley Unified School Dist., No. 69*, 374 F.3d 857, 865 (9th Cir.2004) ("*Buckhannon's* definition of 'prevailing party' applies to the IDEA's attorney's fees provision, 20 U.S.C. § 1415(i)(3)(B).").

■ Under the IDEA, a partially prevailing plaintiff may recover attorneys' fees commensurate with the party's "degree of success." *Aguirre v. Los Angeles Unified School Dist.*, 461 F.3d 1114, 1121 (9th Cir.2006) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 430, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Even if a complainant succeeds in the underlying proceeding, however, "a plaintiff is not the prevailing party [for purposes of awarding attorneys' fees under the IDEA] if his or her success is purely technical or de minimis." *Shapiro*, 374 F.3d at 865; *see also Farrar v. Hobby*, 506 U.S. 103, 115, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) ("In some circumstances, even a plaintiff who formally 'prevails' . . . should receive no attorney's fees at all.") (citation omitted); *L.M. v. Capistrano Unified School Dist.*, 556 F.3d 900, 910 (9th Cir.2009) (vacating award of attorneys' fees while explaining "a procedural

violation may be harmless, and we must consider whether the procedural error either resulted in a loss of educational opportunity or significantly restricted parental participation").

## III.

## ALLEGATIONS OF THE COMPLAINT

On May 30, 2012, Plaintiffs' counsel filed a Compliance Complaint with the California Department of Education. (Complaint at 2–3; Gandhi Decl., Exh. A at 4).[2] Plaintiffs complained that Defendant had failed to timely convene Student's annual IEP review. (Complaint at 3; Gandhi Decl., Exh. A at 3). According to the Compliance Complaint, even though Student's last IEP meeting had occurred on May 5, 2011, Defendant cancelled Student's May 4, 2012 IEP meeting "at the last minute" and, as of the date the Compliance Complaint was filed, May 30, 2012, had not yet held the required meeting. (*Id.* at 2–3). Student's annual IEP review was subsequently held on May 31, 2012. (*Id.*, Exh. B at 2).

On July 14, 2012, the California Department of Education issued its Investigation Report. (Complaint at 3; Gandhi Decl., Exh. B at 1). The Report concluded that because Defendant held Student's IEP meeting "beyond the required timeline," it was "out of compliance." (*Id.* at 2). The corrective action ordered by the Department in the Report required Defendant, on or before September 14, 2012, to "provide

2. Although the Complaint does not attach copies of Plaintiffs' underlying Compliance Complaint or the Department's Investigation Report, it refers to both documents, which are integral to Plaintiffs' claim. (*See* Complaint at 3). As further explained below, pursuant to the "incorporation by reference doctrine," the court may consider on a motion to dismiss "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically

attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (brackets in original) (internal quotation marks omitted). The Court will therefore cite to the Compliance Complaint and the Investigation Report, which are attached as exhibits to the Declaration of Roshni Gandhi in support of Plaintiffs' Amended Opposition, as though they formed part of the allegations in the Complaint. (*See* Gandhi Decl., Exhs. A & C).

evidence it has sent a memorandum reviewing the requirements and including the text of 34 C.F.R. Section 300.324(b)(1)(i) [requiring IEP reviews no less than annually] to all applicable staff at the student's school site." (Complaint at 3; Gandhi Decl., Exh. B at 2). The Report noted that either party could seek reconsideration of the findings, conclusions, or corrective action in the Investigation Report by sending a request for reconsideration to the State Superintendent of Public Instruction within 35 days. (*Id.*). No other relief was ordered.

Plaintiffs informally demanded payment of attorneys' fees under the IDEA from Defendant on two occasions prior to filing the current action. (Complaint at 3–4). Plaintiffs presently seek $5,542.16 in attorneys' fees for prosecution of the Compliance Complaint. (*Id.* at 4). Plaintiffs also request reasonable attorneys' fees and costs incurred in prosecuting the instant action. (*Id.*).

## IV.

### DEFENDANT'S MOTION TO DISMISS

Defendant raises three primary grounds for dismissal. First, Defendant contends that complaint resolution procedures, such as the underlying CRP at issue here, are not "actions or proceedings" under the IDEA for which attorneys' fees are available. (MTD at 1, 6–10). Second, Defendant contends that Plaintiffs are not "prevailing parties" under *Buckhannon* because the decision by the California Department of Education "was insufficient to materially alter the legal relationship between the parties." (*Id.* at 1, 11–12). To the extent that any alteration of the relationship resulted, Defendant contends that it was merely de minimis. (*Id.* at 10–11). Third, Defendant contends that state CRPs do not bear the necessary "judicial imprimatur" required for a party to be considered a "prevailing party" under the IDEA. (*Id.* at 1, 12–13). Accordingly, Defendant requests that this Court deny Plaintiffs' request for fees and dismiss the action.

## V.

### STANDARDS GOVERNING MOTIONS TO DISMISS

Pursuant to Rule 12(b)(6), a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A court may grant such a dismissal only where the plaintiff fails to present a cognizable legal theory or to allege sufficient facts to support a cognizable legal theory. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir.2008); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) ("A court may dismiss a complaint [for failure to state a claim] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.").

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The court must accept all factual allegations as true even if doubtful in fact. *Twombly*, 550 U.S. at 555–56, 127 S.Ct. 1955. However, the court does not have to accept as true mere legal conclusions. *See Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 ("Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice.").

"When ruling on a motion to dismiss, [a court] may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Colony Cove Properties, LLC v. City of Carson,* 640 F.3d 948, 955 (9th Cir.2011) (internal quotation marks omitted). "[N]otice may be taken where the fact is 'not subject to reasonable dispute,' either because it is 'generally known within the territorial jurisdiction,' or is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Castillo–Villagra v. I.N.S.,* 972 F.2d 1017, 1026 (9th Cir.1992) (quoting Fed.R.Evid. 201(b)). Courts are permitted to take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment.[3] *Intri-Plex Technologies, Inc. v. Crest Group, Inc.,* 499 F.3d 1048, 1052 (9th Cir.2007).

In addition, pursuant to the "incorporation by reference doctrine," the court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel,* 393 F.3d at 1076 (brackets in original) (internal quotation marks omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."). However, the "mere mention" of a document that is not "integral" to a claim is not sufficient to authorize consideration of the document under the "incorporation by reference" doctrine. *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir.2003).

## VI.

## DISCUSSION

Defendant argues that dismissal is required because (1) a CRP is not an action or proceeding "brought under" section 1415, and (2) Plaintiffs are not "prevailing parties" because (a) the CRP did not effect a material change in the Parties' legal relationship, or if any change did result, it was de minimis, and (b) a CRP does not bear a "judicial imprimatur." (MTD at 1). Because the Court finds that Plaintiffs' Compliance Complaint did not effect a material alteration in the Parties' legal relationship and that any change in their relationship resulting from the Department's Report was de minimis, Defendant's Motion to Dismiss is GRANTED.

The Parties' briefings focus in large part on the question of whether a CRP proceeding is properly considered an "action or proceeding brought under" the IDEA for which attorneys' fees are available. (*See* MTD at 6–10; Am. Opp. at 2–5; Reply at 6–9). Plaintiffs contend that the Ninth Circuit resolved this question in *Lucht,* which held that "to the extent that a CRP complaint addresses a dispute that is subject to resolution in a § 1415 due process hearing, the CRP is a proceeding 'brought under' § 1415." *Lucht,* 225 F.3d

---

**3.** Plaintiffs request judicial notice of the unpublished Order on Cross–Motions for Summary Judgment in the matter of *S.A. v. Tulare County Office of Education,* 2009 WL 3126322 (E.D.Cal. Sept. 24, 2009) ("*S.A. II*"). (Dkt. No. 18). Because the Eastern District's Order is a public record the existence of which may be easily verified from reliable sources, Plaintiffs' Request is GRANTED.

at 1029; (see also Am. Opp. at 2). Defendant notes, however, that the IDEA and its regulations were amended after *Lucht* issued, and that the official comments of the United States Department of Education on the revised regulations explain that "the awarding of attorneys' fees is not available under the Act for state complaint resolutions." (MTD at 6) (quoting Assistance to States for the Education of Children with Disabilities and Preschool Grants for Children with Disabilities, Final Rule—71 Fed.Reg. 46,602 (Aug. 14, 2006)). Defendant further argues that the Supreme Court's definition of "prevailing party" in *Buckhannon,* which issued the year following the *Lucht* decision, calls into question the continuing validity of *Lucht's* holding. (MTD at 8–10). Pursuant to *Buckhannon,* a prevailing party must have obtained a material, judicially sanctioned change in the legal relationship of the parties in order to be entitled to recover attorneys' fees and costs. *Buckhannon,* 532 U.S. at 604–05, 121 S.Ct. 1835. Defendant argues that a "CRP investigation does not confer any judicial imprimatur" because there is "no official judicial approval and/or any level of continuing judicial oversight of CRP investigation reports," a factor which the *Lucht* Court did not consider. (Reply at 3, 6).

The Court recognizes that there is a circuit split regarding whether a CRP, even one raising issues that could have been brought in an impartial due process hearing, is an "action or proceeding brought under" section 1415. *Compare Lucht,* 225 F.3d at 1029 (CRP that addresses a dispute subject to resolution in a § 1415 due process hearing is "brought under" § 1415), *with Vultaggio ex rel. Vultaggio v. Board of Educ.,* 343 F.3d 598, 603 (2d Cir.2003) (rejecting *Lucht* and holding that "the CRP is not a 'proceeding brought under' § 1415"). However, the Court further recognizes that *Lucht* has not been

reversed and appears to remain binding law on district courts in the Ninth Circuit. *See Yong v. I.N.S.,* 208 F.3d 1116, 1119 n. 2 (9th Cir.2000) ("[O]nce a federal circuit court issues a decision, the district courts within that circuit are bound to follow it ...."); *see also M.M. v. Lafayette School Dist.,* 681 F.3d 1082, 1088 (9th Cir.2012) (citing *Lucht* ); *P.N.,* 474 F.3d at 1169 (same). Furthermore, district courts in this Circuit have awarded attorneys' fees based on a complainant's successful CRP in IDEA disputes even after *Buckhannon. See, e.g., S.A. II,* 2009 WL 3126322 at *8 (awarding attorneys' fees under the IDEA following resolution of claims through CRP compliance complaint). However, the Court does not need to reach the merits of Defendant's contention that *Lucht's* holding has been superseded by *Buckhannon* to resolve this matter. Even assuming, without deciding, that a CRP in at least some circumstances is an "action or proceeding brought under" section 1415 with some form of "judicial imprimatur," Plaintiffs' Complaint must be dismissed because Plaintiffs' Compliance Complaint did not effect a material alteration in the Parties' legal relationship. The Court further finds that, even if one assumed *arguendo* that there was a change in the Parties' relationship, the change was *de minimis.* Thus, Plaintiffs are not "prevailing parties" as defined by *Buckhannon* and are not entitled to attorneys' fees under the IDEA.

As previously discussed, *Buckhannon* clarified that to be considered a "prevailing party" in an administrative proceeding, a complainant must achieve a "material alteration" of the parties' legal relationship that is "judicially sanctioned." *Buckhannon,* 532 U.S. at 604–05, 121 S.Ct. 1835; *see also P.N.,* 474 F.3d at 1172; *Shapiro,* 374 F.3d at 865. An alteration is "material" if it "require[s] the [school district] to

do something [it] otherwise would not have to do." *V.S. ex rel. A.O. v. Los Gatos–Saratoga Joint Union High School Dist.,* 484 F.3d 1230, 1233 (9th Cir.2007) (quotation marks omitted; some brackets in original); *see also Fischer v. SJB–P.D. Inc.,* 214 F.3d 1115, 1118 (9th Cir.2000) (" '[A] material alteration of the legal relationship occurs [when] the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant' ... because the plaintiff can force the defendant to do something he otherwise would not have to do.") (quoting *Farrar,* 506 U.S. at 113, 113 S.Ct. 566). An alteration is not "material," however, if the complainant's success is "purely technical or de minimis." *Shapiro,* 374 F.3d at 865.

It is undisputed that Defendant ultimately convened Student's required IEP meeting but that the meeting was untimely by nearly four weeks in violation of 34 C.F.R. § 300.324(b)(1)(i). The IDEA includes "rigorous procedural requirements." *M.L. v. Federal Way School Dist.,* 394 F.3d 634, 646 (9th Cir.2005) (internal quotation marks omitted). These "substantial procedural safeguards ... ensure that the purposes of the IDEA are fully realized." *Anchorage School Dist. v. M.P.,* 689 F.3d 1047, 1054 (9th Cir.2012). However, "not all procedural violations deny the child a FAPE [free appropriate public education]." *R.B. ex rel. F.B. v. Napa Valley Unified School Dist.,* 496 F.3d 932, 938 (9th Cir.2007). Where a procedural violation "resulted in some defect in [the student's] IEP," the Ninth Circuit has found, "more often than not," that the procedural violation denied the child a FAPE. *Id.* at 940 (citing cases). In contrast, where the procedural violation did not result in the loss of educational opportunity or seriously infringe on the parents' opportunity to participate in the IEP formation process, the IDEA procedural error has been deemed harmless. *Id.* at 938. *Compare*

*M.L.,* 394 F.3d at 636 ("structural" procedural defect in school district's failure to include a regular education teacher on student's IEP team rendered IEP invalid), *with L.M.,* 556 F.3d at 913 (vacating award of attorneys' fees where school district's procedural error did not deprive parents of their right to meaningfully participate in the IEP process).

A school district's complete failure to develop an IEP for an eligible student is clearly a material violation of the IDEA. *See, e.g., Knable ex rel. Knable v. Bexley City School Dist.,* 238 F.3d 755, 766 (6th Cir.2001) (complete failure to prepare an IEP was a material violation of the IDEA because "without an IEP in place, [the student's] behavior and academic performance suffered"). However, whether a plaintiff is a "prevailing party" in an action alleging the failure to schedule an IEP meeting appears to depend on whether the school district was ordered to hold an IEP review by the underlying administrative officer. *See, e.g., Davis v. District of Columbia,* 864 F.Supp.2d 110, 116 (D.D.C. 2012) (plaintiff was "prevailing party" in an action alleging school district's failure to hold IEP review where hearing officer ordered school district to convene IEP meeting); *Wood v. District of Columbia,* 864 F.Supp.2d 82, 89 (D.D.C.2012) (same). Where the parties voluntarily hold an IEP meeting following a complaint of untimeliness without an order from the administrative officer to do so, however, the plaintiff is not considered a "prevailing party." *Dickens v. Friendship–Edison P.C.S.,* 639 F.Supp.2d 51, 59–60 (D.D.C.2009); *see also Buckhannon,* 532 U.S. at 600, 121 S.Ct. 1835 (plaintiff is not "prevailing party" where defendant voluntarily changes conduct absent court order).

■ Here, the corrective action ordered in the Department's Investigation Report,

i.e., to send a memorandum to school staff reminding them of the IEP requirements, did not effect a "material alteration" in the legal relationship between Plaintiffs and Defendant. At most, any arguable change in the Parties' relationship was technical or *de minimis*. By the time the Department issued its Investigation Report on July 14, 2012, Student's IEP review, which was held on May 31, 2012, had already taken place without the intervention of the Department. There was nothing, therefore, in Student's specific case that the Department's corrective action order could address or any "actual relief" the Department could provide because by the time the Department's investigation began, Defendant had already fulfilled its obligation to hold an IEP review.[4] The corrective action ordered by the Department did not require Defendant to hold a new IEP meeting for Student and indeed did not specifically involve Student at all. The corrective action did not even affirmatively order Defendant to hold IEP reviews annually or otherwise to adhere to regulations under the IDEA. Instead, the Department merely ordered Defendant to send a memorandum to certain staff reminding them of the requirements of an existing regulation, with no immediate or direct impact on Student. (Gandhi Decl., Exh. B at 2).

Whether or not Defendant complied with the Department's corrective action order by sending the required memorandum, Plaintiffs' legal position did not and would not change, as Student would still be entitled to an annual IEP review. Plaintiffs urged at the hearing that the Department's finding that Defendant was "out of compliance" was tantamount to "declaratory relief" announcing Student's

entitlement to an annual review. Even so construed, however, Plaintiffs' legal position still did not change. Unlike a declaration finding that a student is in fact "disabled" and eligible for assistance, or is entitled to particular services not currently being provided by the school district, the Parties did not dispute that Student was entitled to the protections provided by the IDEA, including its procedural guarantees. Therefore, even construing the Investigation Report as a "declaration" that Student is entitled to an annual IEP review, the Department did not require Defendant to do something it "otherwise would not have to do" because as a child with disabilities, Student was already entitled to an annual review. *V.S.*, 484 F.3d at 1233.

■ Finally, even assuming *arguendo* that the Department's order requiring a memorandum to staff constituted a change in the Parties' legal relationship, the relief obtained was de minimis. In the first instance, even though Defendant was not otherwise obligated to distribute the memorandum, the act of sending out a memorandum is a relatively simple, isolated act. In addition, the connection between the corrective action and Student is attenuated. The receipt of a memorandum by school staff had no immediate or direct impact on Student. Indeed, Defendant was not even required to notify Student that it had complied with the Department's order. Finally, even if Plaintiffs learned that Defendant had failed to distribute the memorandum, it does not appear that Plaintiffs could directly bring an action to enforce the order, because only "the Superintendent of Public Instruction is authorized to bring an action to enforce a

---

4. The Court further notes that the delay in holding Student's IEP meeting, while a violation of the IDEA's regulations, occurred near the end of the traditional school year and

does not appear to have hindered the implementation of Student's new IEP before school concluded for summer vacation or when it reconvened in the fall.

CRP order." *Porter*, 307 F.3d at 1073 (citing 5 Cal.Code Regs. § 4670). Because the Department's Report, including the corrective action it ordered, did not materially change the Parties' legal relationship, and because the complaint only resulted in technical or de minimis relief, Plaintiffs are not "prevailing parties" under the IDEA. Accordingly, Plaintiffs are not entitled to attorneys' fees for the successful prosecution of their Compliance Complaint and Defendant's Motion to Dismiss must be GRANTED.

## VII.

### CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED. Because amendment of the Complaint would futile, Plaintiffs' Complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.