**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

M. M.; E. M., individually and on
behalf of the minor son, C.M.,
        *Plaintiffs-Appellants,*

v.

LAFAYETTE SCHOOL DISTRICT, a
local educational agency;
LAFAYETTE BOARD OF EDUCATION;
CALIFORNIA DEPARTMENT OF
EDUCATION (CDE); JACK
O'CONNELL, as State
Superintendent of Public
Instruction for the State of
California; CALIFORNIA
DEPARTMENT OF GENERAL SERVICES
(DGS), operating as the California
Office of Administrative Hearings
(OAH); WILL BUSH, as State
Director of the California
Department of general Services,
        *Defendants-Appellees.*

No. 10-16903

D.C. No.
3:09-cv-03668-SI

OPINION

Appeal from the United States District Court
for the Northern District of California
Susan Illston, District Judge, Presiding

Argued and Submitted
December 7, 2011—San Francisco, California

Filed June 6, 2012

Before: Arthur L. Alarcón, Consuelo M. Callahan, and
N. Randy Smith, Circuit Judges.

Opinion by Judge Callahan

---

**SUMMARY**

---

**Government Law/Education**

The court of appeals affirmed a judgment of the district court. The court held that 20 U.S.C. § 1415(i) does not allow immediate judicial review of pre-hearing rulings and decisions made by an ALJ in a case under the Individuals with Disabilities Education Act.

An administrative law judge dismissed several of a special education student's claims against appellee Lafayette School District prior to holding a due process hearing because the claims alleged conduct outside the Individuals with Disabilities Education Act's two-year statute of limitations. Appellants, the child's parents, challenged the ALJ's decision in California's northern district. The district court dismissed the parents' complaint against Lafayette, finding that they were not yet aggrieved parties within the meaning of the IDEA because the ALJ had not yet issued his final decision. The court also dismissed the parents' separate claims against the California Department of Education (CDE), in which the parents alleged that the CDE had failed to comply with its obligations under the IDEA when it closed its investigation of the allegations against Lafayette, ruling that the claim was duplicative of a claim in another pending district court matter before the same judge.

The parents appealed, contending that the IDEA does not require a plaintiff to wait until a final decision has been issued before seeking judicial review challenging pre-hearing rulings.

**[1]** The IDEA provides a right to bring a civil action to any party aggrieved by the findings and decision made by the ALJ in a due process hearing. The Ninth Circuit had not previously addressed the issue of whether a plaintiff must wait until an ALJ issues a final decision before seeking judicial review.

**[2]** The IDEA, § 1415(i)(2)(A), allows an action by any party aggrieved by the findings and decision made under this subsection. Nothing in § 1415(i) specifically allows immediate judicial review of a pre-hearing ruling. **[3]** Several cases indicate that a party may not proceed as an aggrieved party under the statute until a final decision has been issued following a due process hearing. **[4]** The Supreme Court has also used language that suggests that a party in an IDEA case must wait for the final decision following the due process hearing before filing suit in district court.

**[5]** The court of appeals concluded that the district court properly declined review of the ALJ's interlocutory ruling made before the due process hearing in this IDEA case. Section 1415(i) provides for judicial review of the decision of the hearing officer, but the statute makes clear that the decision referred to is the decision made following a due process hearing or in a state administrative appeal. **[6]** The court of appeals held that § 1415(i) does not allow immediate judicial review of pre-hearing rulings and decisions made by an ALJ in an IDEA case. Rather, a party may bring suit if he is aggrieved by the findings and decision made by the ALJ following the conclusion of the due process hearing. The district court did not err in dismissing the claims against Lafayette.

**[7]** As to the claims against the CDE, these claims were not based on an alleged violation of § 1415(i) and were not presented to, or required to be presented to, an ALJ. These claims were not premature.

**[8]** The court of appeals also ruled that the parents did not show that the district court's dismissal of duplicative claims

in the litigation between the parties was an abuse of its discretion, and **[9]** the district court correctly determined that the parents' disagreement with one decision of one ALJ did not state a claim against the CDE. The judgment of the district court had to be affirmed.

---

## COUNSEL

Lina Foltz, Attorney-At-Law, Oakland, California, for the plaintiffs-appellants.

Lafayette School District and Lafayette Board of Education: Amy R. Levine (argued), Deborah Ungar Ettinger, Dannis Wolver Kelley, San Francisco, California, for the defendants-appellees.

California Department of Education and Jack O'Connell: Amy Bisson Holloway, Edmundo Aguilar (argued), Sacramento, California, for the defendants-appellees.

---

## OPINION

CALLAHAN, Circuit Judge:

This case began as a dispute over the results of CM's special education evaluation under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"), but now has a convoluted procedural history, including three separate district court lawsuits and two administrative complaints. Many of these issues are outside of the narrow scope of this appeal, however, and will not be addressed in this opinion.

This appeal is limited to two distinct issues. First, the Administrative Law Judge ("ALJ") dismissed several of

CM's claims against Lafayette School District and the Lafayette Board of Education (collectively, "Lafayette") prior to holding a due process hearing because the claims alleged conduct outside the IDEA's two-year statute of limitations. CM's parents, MM and EM (collectively "MM"), sought review in the district court, which held that MM was not an "aggrieved party" under the IDEA because the ALJ had not yet held a due process hearing or issued a final ruling on MM's complaint. Second, the district court dismissed MM's separate claims against the California Department of Education ("CDE"), in which MM alleged that the CDE had failed to comply with its obligations under the IDEA when it closed its investigation of the allegations against Lafayette. MM claimed that the CDE had failed to properly supervise the hearing officers of the Office of Administrative Hearings. The district court held that MM's first claim was duplicative of his claim in another pending district court matter before the same judge, and that MM's second claim failed to state a claim. We affirm because MM prematurely filed his complaint against Lafayette in the district court and the CDE has no authority to supervise the independent hearing officers.

## BACKGROUND[1]

CM is a twelve-year-old boy who lives with his parents, MM and EM, within the boundaries of the Lafayette School District. CM began kindergarten in the Lafayette School District in 2005 when he was six years old. At the time, he displayed deficits in the areas of reading, articulation, vision, and fine motor skills. During kindergarten, the district provided special reading, speech, and language services to CM as a "guest" of the district's special education program. MM sub-

---

[1]The facts are taken primarily from the First Amended Complaint, which are accepted as true on an appeal from a grant of a motion to dismiss. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Additional facts are taken from MM's Request to Schedule a Due Process Hearing, the partial dismissal of which spawned this lawsuit.

mitted a written request to the district to evaluate CM for learning disabilities on October 26, 2006, early in CM's first grade year. Lafayette did not provide an assessment plan for CM until February 20, 2007.

Lafayette conducted CM's initial evaluation in March and April, 2007. District Staff and MM held the first meeting of CM's individual education plan ("IEP") team on April 18, 2007, to discuss the results of CM's educational assessment. The IEP team determined CM was eligible for special education and related services and developed a program based on the assessment results. MM now complains that the initial evaluation was flawed because, among other things, the evaluation was conducted by individuals unqualified to select the appropriate tests or administer them. However, MM does not allege that he voiced any of these concerns at the time of the April 18, 2007 meeting, or at any time thereafter until he filed his due process complaint on April 16, 2009.

During the year after the initial evaluation, MM advised Lafayette's staff of his continued concerns that CM was falling further behind at school and that CM had yet-unidentified special educational needs. MM asked Lafayette if it would provide additional evaluations regarding CM's speech and language needs, and his auditory processing. Lafayette refused to provide additional evaluations, but recommended that MM obtain assessments of CM privately. Between November 2007 and March 2008, MM obtained private evaluations (at his own cost) that indicated CM had an auditory processing disorder that was related to his learning disability. There is no indication MM shared the results of the assessments with Lafayette when they were completed. Instead, MM apparently waited until September 17, 2008, to advise Lafayette that he disagreed with the initial evaluation and request an independent educational evaluation ("IEE").[2]

---

[2]There is no indication in the record why MM waited at least six months after having the results of his private evaluations, and some 17 months

Once MM disagreed with the initial evaluation and requested an IEE, Lafayette had two choices. It could, "without unnecessary delay," provide the requested IEE or file a request for a due process hearing to defend the initial assessment with the California Department of General Services, Office of Administrative Hearings[3] ("OAH"). 34 C.F.R. § 300.502(b)(2); Cal. Educ. Code § 56329(c). Lafayette declined to provide an IEE, but it did not immediately request a due process hearing regarding the disagreement.

On November 18, 2008, MM filed a compliance complaint with the CDE, alleging that Lafayette failed to comply with IDEA procedures after his request for an IEE. CDE began an investigation. On December 3, 2008, Lafayette filed a due process hearing request with the OAH to defend its initial evaluation of CM (the "2008 OAH Case"). On December 19, 2008, Lafayette requested that CDE stay its investigation of MM's complaint because the IEE issue was pending before the OAH in Lafayette's due process request. On January 30, 2009, CDE closed its investigation pursuant to Lafayette's request.

On April 16, 2009, MM filed a due process complaint with the OAH against Lafayette (the "2009 OAH Case"), alleging 16 separate issues. Several of the issues concern Lafayette's alleged failure to identify CM's disability before April 16, 2007. Lafayette filed a motion to dismiss the claims that arose before April 16, 2007, as being barred by the two-year statute of limitations in the IDEA, 20 U.S.C. § 1415(f)(3)(C). On

---

after the initial evaluation, to dispute the initial evaluation. When the ALJ determined that Lafayette waited too long after September 17, 2008, to file a due process hearing request, he awarded MM the cost of the evaluations MM had obtained. However, the ALJ discounted the amount by 50% due to MM's delay.

[3]The OAH is an office within the California Department of General Services ("DGS"). The OAH conducts due process hearings in accordance with the IDEA pursuant to a contract with CDE. *See* Cal. Educ. Code § 56504.5, Cal. Gov't Code § 27727.

May 13, 2009, the ALJ dismissed claims one through six because they arose before April 16, 2007. The rest of the issues remained live in the 2009 OAH Case, and were to be resolved at the due process hearing.

Rather than wait for the resolution of the 2009 OAH Case at the due process hearing, MM filed a lawsuit against Lafayette in the district court on August 11, 2009, challenging the ALJ's dismissal of the claims that the ALJ had determined were barred by the statute of limitations. Lafayette filed a motion to dismiss MM's complaint, but before the hearing on the motion, MM filed a First Amended Complaint ("FAC"). The FAC added the Lafayette Board of Education as a defendant, and included new claims against the CDE and its Superintendent, who the FAC also added as defendants.[4] After all defendants filed motions to dismiss for failure to state a claim, the district court dismissed the FAC on June 2, 2010.

### A.   Claims Against Lafayette

The first three claims in the FAC, all against Lafayette, (1) challenged the ALJ's dismissal of the six time-barred claims, (2) sought a determination that Lafayette's initial evaluation of CM's educational needs was inadequate, and (3) sought attorney's fees. The district court found that these claims were premature as MM was not an "aggrieved party" because the 2009 AOH Case was still pending. The court dismissed these claims without prejudice to re-filing once the ALJ issued his final ruling.

The fourth claim was based on CDE's closure of its investigation of MM's complaint and alleged violations of the Fifth Amendment, the IDEA, and 42 U.S.C. § 1983. The court dismissed the fourth claim for relief with prejudice, finding it was duplicative of another pending district court action before

---

[4]The FAC also added the DGS and its Director as defendants. These defendants are not involved in this appeal.

the same judge, Case No. 09-4624, and because it was based entirely on the administrative record in the 2008 OAH Case, the subject of Case No. 09-4624.

## B.   Claims Against CDE

The FAC's fourth claim was also brought against the CDE, and as discussed, was dismissed with prejudice as duplicative of another pending case. The fifth claim, which was brought against CDE, the DGS and its Director, alleged that CDE "failed to conduct proper oversight of the OAH hearing process" and that it failed to "provide appropriate instruction and guidance for the OAH hearing officer" in violation of the Fifth Amendment, the IDEA, and 42 U.S.C. § 1983. The district court dismissed the fifth claim against CDE with prejudice, finding that CDE had no authority to oversee or supervise the individual hearing officers of the OAH, which is an independent state agency.

## C.   MM's Appeal

The district court granted MM leave to file an amended complaint against DGS not later than June 28, 2010, and granted leave to re-file against Lafayette once the ALJ had issued his final decision. When MM failed to file an amended complaint, the court dismissed the entire action without prejudice on July 29, 2010. The court entered judgment on August 2, 2010.[5] MM timely filed his notice of appeal on August 27, 2010.[6] We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

---

[5]In addition to the district court case that is the subject of this appeal, Case No. 09-3668, there were two other district court cases filed by MM against Lafayette pending when the court issued its ruling. Case No. 09-4624 sought review of the ALJ's final order in the 2009 OAH Case, and Case No. 10-4223 sought review of the ALJ's final decision in the 2008 OAH Case. Both cases are now also on appeal.

[6]MM does not appeal the dismissal of the fourth claim as to Lafayette. As to the CDE, MM appeals the dismissal of the fourth and fifth claims only insofar as they are based on alleged violations of the IDEA. He does not appeal the dismissal of the DGS and its Director from this matter.

## *DISCUSSION*

### I.   Standard of Review

We review the district court's dismissal for failure to state a claim de novo. *Knievel*, 393 F.3d at 1072. We review a district court's control of its docket, including its decision to dismiss a duplicative claim, for an abuse of discretion. *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688-89 (9th Cir. 2007).

### II.   Claims Against Lafayette

**[1]** The IDEA provides a right to bring a civil action to "[a]ny party aggrieved by the findings and decision made" by the ALJ in a due process hearing. 20 U.S.C. § 1415(i)(2)(A). The ALJ dismissed several of MM's claims against Lafayette prior to the due process hearing because they arose outside of the IDEA's two-year statute of limitations. The district court dismissed MM's FAC against Lafayette, finding that CM and his parents were not yet aggrieved parties within the meaning of the IDEA because the ALJ had not yet issued his final decision. MM contends that the IDEA does not require a plaintiff to wait until a final decision has been issued before seeking judicial review challenging pre-hearing rulings. This court has not previously addressed the issue of whether a plaintiff must wait until an ALJ issues a final decision before seeking judicial review.

The IDEA provides a private right of action in the district courts by an "aggrieved party" under two circumstances. 20 U.S.C. § 1415(i).[7] First, a party may bring suit if he or she is

---

[7]20 U.S.C. § 1415(i) provides, in pertinent part:

  (i) Administrative procedures

    (1) In general

      (A) Decision made in hearing

"aggrieved by the findings and decision made under subsection (f) or (k) . . . ." 20 U.S.C. § 1415(i)(2)(A). MM contends that he brought his action under subsection (f). However, subsection (f) concerns due process hearings, and the only decision contemplated by the plain meaning of that subsection is the decision following the due process hearing.[8] 20 U.S.C.

---

A decision made in a hearing conducted pursuant to subsection (f) or (k) shall be final, except that any party involved in such hearing may appeal such decision under the provisions of subsection (g) and paragraph (2).

(B) Decision made at appeal

A decision made under subsection (g) shall be final, except that any party may bring an action under paragraph (2).

(2) Right to bring civil action

(A) In general

Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

[8]Subsection (f)(3)(E) provides, in relevant part:

(E) Decision of hearing officer

(i) In general

Subject to clause (ii), a decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education.

(ii) Procedural issues

In matters alleging a procedural violation, a hearing officer may find that a child did not receive a free appropriate public education only if the procedural inadequacies—

§ 1415(f), (f)(3)(E). Because the ruling dismissing the six claims at issue here was rendered *before* the due process hearing, this subsection does not apply.[9] Thus, the first cited provision of § 1415(i) does not provide MM a right to bring suit challenging this pre-hearing ruling.

[2] A second provision under § 1415(i) allows an action by "any party aggrieved by the findings and decision made under this subsection . . . ." *Id.* § 1415(i)(2)(A). Subsection (i) concerns decisions made in two instances—decisions made in a due process hearing and decisions made during a state administrative appeal. *Id.* § 1415(i)(1). Nothing in subsection (i) specifically allows immediate judicial review of a pre-hearing ruling.

[3] The district court concluded that MM's claims were premature since the ALJ had not yet held a due process hearing and issued a decision. The district court read § 1415(i) to permit a claim only by "parties aggrieved by the findings and decision issued by a hearing officer *after* the due process hearing. . . ." (emphasis added). Several cases, including those cited by the district court, support this interpretation and indicate that a party may not proceed as an "aggrieved party" under the statute until a final decision has been issued following a due process hearing. The clearest such statement is in the district court decision in *Lake Washington*:

> (I) impeded the child's right to a free appropriate public education;
>
> (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or
>
> (III) caused a deprivation of educational benefits.

[9]Subsection (k) refers to the placement of a child in an alternative education setting, which is not the case here.

Plaintiff is not aggrieved by the decision made by the ALJ, for the simple reason that the ALJ has not yet rendered his final decision. The IDEA does not permit a plaintiff, allegedly aggrieved by a pre-hearing order, to file a complaint in federal court while administrative proceedings are still pending and seek the functional equivalent of an interlocutory appeal.

*Lake Wash. Sch. Dist. No. 414 v. Office of Superintendent of Pub. Instruction*, 2009 WL 959818, at \*5 (W.D. Wash. April 8, 2009). On appeal, we affirmed. *Lake Wash. Sch. Dist. No. 414 v. Office of Superintendent of Pub. Instruction*, 634 F.3d 1065, 1066 (9th Cir. 2011) (stating "[o]nce the state educational agency has reached a decision, an aggrieved party may sue in federal court"). However, we did not reach the issue of whether a plaintiff may seek interlocutory review of a pre-hearing ruling in the district court because we held that the school district lacked constitutional standing and that the IDEA provided a right of action only to students and parents, not the school district. *Id.* at 1069.

**[4]** The Supreme Court has also used language that suggests that a party in an IDEA case must wait for the final decision following the due process hearing before filing suit in district court. In *Winkelman ex rel. Winkelman v. Parma City School District*, 550 U.S. 516, 525 (2007), the Court explained that, "[o]nce the state educational agency has reached its decision, an aggrieved party may commence suit in federal court: 'Any party aggrieved by the findings and decision made [by the hearing officer] shall have the right to bring a civil action with respect to the complaint.' " *Id.* at 526 (quoting 20 U.S.C. § 1415(i)(2)(A)) (alteration original). However, *Winkelman* did not involve interlocutory review of a pre-hearing ruling, so its language is dicta.

We have similarly stated the rule as permitting judicial review following a final determination of the due process

hearing. *Lucht v. Molalla River Sch. Dist.*, 225 F.3d 1023, 1026 (9th Cir. 2000) (stating a "parent of a disabled child has the right to appeal the *final decision* of the administrative agency to the district court") (emphasis added). *Lucht* does not decide the issue, however, because it did not involve a pre-hearing decision and there was no analysis developing the stated rule. *Id.* "[S]tatements made in passing, without analysis, are not binding precedent." *Thacker v. FCC (In re Magnacom Wireless, LLC)*, 503 F.3d 984, 993-94 (9th Cir. 2007).

In addition, other circuits have also suggested that a party may only file suit after the ALJ has issued a final decision following the due process hearing. After describing the hearing process and the administrative appeals available under the IDEA, the Second Circuit noted that

> the IDEA does not permit students or their parents to sue the moment they are dissatisfied with the outcome of any of these proceedings. Rather, the IDEA grants prospective plaintiffs a federal (or state) cause of action only at the end of the administrative process: to parties who are "aggrieved" by the "final" decision of a state educational agency, or, if the agency does not provide an internal avenue of appeal, by the final decision of the impartial hearing officer.

*Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 209 (2d Cir. 2007) (Staub, J., concurring). The discussion in *Coleman* came in the context of requiring the parents to exhaust their administrative remedies prior to filing suit in court. However, MM arguably did exhaust his administrative remedies as to the six claims the ALJ dismissed. The question is whether he can immediately seek review of that dismissal in the district court, or must wait until the ALJ renders a final decision as to the remaining claims in his due process complaint. This question bears a strong resemblance to a familiar

jurisdictional limitation over appeals from district court actions.

If MM sought to appeal a district court's order dismissing some, but not all, claims before trial, the dismissal would not be appealable due to the "final judgment rule." The Supreme Court has instructed that, as a general rule, "a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994). An order that adjudicates fewer than all claims of all parties is not final. *Nascimento v. Dummer*, 508 F.3d 905, 908 (9th Cir. 2007).

Although technically not applicable to the district court's review of an IDEA case, the principles behind the final judgment rule—emphasizing deference to the district court (or in this case, the ALJ), the promotion of judicial efficiency, and avoiding the harassment and cost of multiple appeals of various rulings, *see Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981)—all apply to judicial review of the ALJ's decision on an IDEA claim in the same way that they apply to appellate court review of a district court ruling. While the district court did not expressly rely on it, the rationale behind the final judgment rule seems to be the same as the rationale behind the district court's dismissal: "Allowing [MM] to appeal aspects of the due process proceedings in a piecemeal fashion would run counter to the IDEA and would hinder efficient resolution of the administrative proceedings."

The final judgment rule is a jurisdictional requirement based on the statutory grant found in 28 U.S.C. § 1291, which expressly provides that jurisdiction of the courts of appeals is limited to *final* judgments of the district courts. The IDEA, however, does not contain such an express limitation conditioning jurisdiction only to final rulings by ALJs. Therefore, while the principles behind the final judgment rule are helpful to the analysis of the issue, the final judgment rule is not itself

a jurisdictional limit the district court's consideration of an IDEA case.

Thus, case law suggests that a party must wait for the final decision following a due process hearing to seek review in the district court, but does not firmly establish such a rule. In the absence of case law, MM relies on his reading of § 1415(o) to support his view that he can bring separate lawsuits based on separate issues.[10] Essentially, MM argues that based on § 1415(o), he could have filed the claims the ALJ dismissed as a separate due process complaint rather than as part of the one due process complaint he did file. He reasons that if he can file separate due process complaints, and if he can file a lawsuit based on each due process complaint without waiting until all due process complaints have been finally decided, then he should be able to file separate lawsuits for each separate claim decided by the ALJ in his due process complaint. Moreover, he contends that he should be able to bring the first lawsuit while the other issues are still being decided administratively. However, § 1415(o) authorizes separate due process administrative complaints on separate issues, not multiple federal district court complaints stemming from a single due process complaint.

**[5]** The plain reading of § 1415(i), supported by relevant case law and the rationale behind the final judgment rule, leads us to conclude that the district court properly declined review of the ALJ's interlocutory ruling made before the due process hearing in this IDEA case. Section 1415(i) provides for judicial review of the decision of the hearing officer, but the statute makes clear that the decision referred to is the decision made following a due process hearing or in a state administrative appeal.

---

[10]20 U.S.C. § 1415(o) provides, in full: "Nothing in this section shall be construed to preclude a parent from filing a separate due process complaint on an issue separate from a due process complaint already filed."

Moreover, even if § 1415(i) were construed to allow immediate judicial review by a party "aggrieved" by an ALJ's interlocutory order, MM has failed to show he is "aggrieved." The only alleged consequence of the district court dismissing MM's complaint as premature is a delay in judicial review of the dismissed claims until after the ALJ has made his decision. This, however, is true of all interlocutory rulings. The statute's requirement that a party be "aggrieved" requires a graver consequence than the postponement of judicial review. The wisdom of this perspective—which is also the foundation of the final judgment rule—is demonstrated in this case. MM's tactics have resulted in three separate district court cases and now three separate appeals from those cases. The result has been a procedural morass which caused significant delay in resolving CM's educational needs, without providing any benefit to CM.

[6]  We hold that 20 U.S.C. § 1415(i) does not allow immediate judicial review of pre-hearing rulings and decisions made by an ALJ in an IDEA case.[11] Rather, a party may bring suit if he is aggrieved by the findings and decision made by the ALJ following the conclusion of the due process hearing.[12] The district court did not err in dismissing the claims against Lafayette.

---

[11] We do not reach the question of whether the ALJ was correct that the claims were time-barred. That question will be answered, if it is answered, in the appeal from Case No. 09-4624.

[12] We do not hold that an ALJ's order completely dismissing a due process complaint without a due process hearing would not give rise to a right of judicial review. If the ALJ completely dismisses the matter, the dismissal is final and judicially reviewable. However, that is not the situation before us. Likewise, we do not comment on what, if any, exceptions might be appropriate to our holding that a party must be aggrieved by the findings and decision of the ALJ *following* the due process hearing in order to bring suit under 20 U.S.C. § 1415(i). Like the exceptions to the final judgment rule, we believe any exceptions to our holding are better addressed when the circumstances which might give rise to an exception are present. No such circumstances are present here.

### III.   Claims Against CDE

[7] The claims against the CDE are separate from the claims against Lafayette. These claims were not based on an alleged violation of 20 U.S.C. § 1415(i) regarding the sufficiency of the free public education provided to CM, but rather were based on CDE's alleged failure to comply with its duty to investigate MM's complaints against Lafayette and supervise the hearing process. These claims were not presented to, nor were they required to be presented to, an ALJ. Unlike the claims against Lafayette, the claims against the CDE are not premature.

### A.   Fourth Claim

MM filed a compliance complaint with the CDE alleging that Lafayette failed to comply with the requirements of the IDEA. After Lafayette filed its due process complaint with the OAH, it requested the CDE close its investigation of MM's compliance complaint because the issue was the subject of Lafayette's due process complaint. CDE closed its investigation, and MM essentially contends closing the investigation was improper. MM's primary argument is that the issues in Lafayette's due process complaint did not include the issue in MM's compliance complaint, namely the timeliness of Lafayette's due process complaint. However, the merits of CDE's decision to close its investigation are not an issue in this appeal.

The district court had before it separate motions to dismiss two cases involving the same parties: Case No. 09-3668, the case on appeal here, and Case No. 09-4624. The district court issued a single order covering both cases and granting both motions. In that order the court dismissed the fourth claim in Case No. 09-3668 because it was duplicative of the claim in Case No. 09-4624. The court found that MM "stated this claim in identical terms in Case No. 09-4624," and that given the duplicative nature of the claim, it was not appropriate to

maintain the claim in Case No. 09-3668. It is well established that a district court has broad discretion to control its own docket, and that includes the power to dismiss duplicative claims. *Adams*, 487 F.3d at 688-89.

[8] The district court did not reach the question of whether CDE properly closed its investigation in Case No. 09-3668. Although the district court did reach that question in its order in regard to Case No. 09-4624, since the fourth claim was dismissed as duplicative in Case No. 09-3668, and this appeal is only from Case No. 09-3668, only the duplicative ruling is before us. Thus, the resolution of the merits of that issue will be decided, if at all, in the appeal of Case No. 09-4624. In *this* case, however, because MM has not shown the district court's dismissal of the duplicative claim was an abuse of its discretion, we affirm. *Adams*, 487 F.3d at 688-89.

## B. Fifth Claim

MM's fifth claim alleges that CDE failed to properly supervise and oversee the OAH and its hearing officers. MM argues that § 1415(f) requires that the due process hearing "be conducted by the State educational agency" and therefore, even if CDE contracts with OAH to provide hearing officers, CDE bears ultimate responsibility for the fairness of the hearings. He argues that the FAC alleges "errors by hearing officers, who dismissed claims as time-barred, specifically ignoring IDEA's knowledge requirement, and who did not reach the primary issue in the complaint which [Lafayette] was required to prove at hearing." Thus, MM argues that because he disagrees with the ALJ's decision as to the statute of limitations, CDE is liable for failure to properly oversee its hearing officer because a properly trained and supervised hearing officer would not have incorrectly dismissed a claim as time-barred when it was not time-barred.

MM's approach is not well taken. As CDE points out, OAH is an independent agency, and § 1415(f) requires that the due

process hearing be conducted before an independent and impartial hearing officer. If we were to accept MM's invitation, it would allow a separate federal complaint against the CDE for every case where the parent or student disagrees with an ALJ's ruling because a properly trained and supervised ALJ would not have made such a ruling. However, the CDE does not have authority or responsibility to directly supervise or review each decision made by an ALJ in a due process hearing.[13] Instead, the IDEA provides a right for an aggrieved party to seek judicial review of the merits of the ALJ's decisions. 20 U.S.C. § 1415(i).

**[9]** MM does not explain why judicial review is not an adequate remedy. MM has not cited any statute, regulation, or case giving CDE the authority to oversee and control the independent OAH hearing officers' decisions. In fact, even the supervisors of the hearing officers lack this authority. The supervisors' duties include "review[ing] the decisions of hearing officers to ensure that the decisions are clear, concise, logical, well-reasoned, supported by appropriate legal authority, and address all issues required to be decided." Cal. Code. Regs. tit. 5, § 3096.2(c)(6). However, "[t]he review of a hearing officer's decision shall not involve altering the findings of fact, conclusions of law or hearing outcomes." *Id.* § 3096.2(c)(6)(C). Thus, review of the OAH's hearing offi-

---

[13]California Education Code requires the CDE to contract with another agency to conduct due process hearings in a manner consistent with federal and state laws and regulations. Cal. Educ. Code § 56504.5. The CDE is required to establish standards for the training and supervision hearing officers, Cal. Educ. Code § 56504.5(c), and for "the quality control mechanisms to be used to ensure that the hearings are fair and the decisions are accurate." Cal. Educ. Code § 56505(c)(1). The CDE has enacted regulations establishing these standards. Cal. Code Regs. tit. 5, §§ 3096.2, 3092, 3098.2. MM does not allege in his complaint, or argue on appeal, that CDE failed to follow its regulations or that these regulations are inadequate to comply with CDE's obligations under the IDEA. Rather, MM argues only that CDE failed to properly oversee one particular hearing officer in one particular ruling, a ruling which MM considers to be wrong.

cer's decision is left for the courts in a proper action against a proper defendant pursuant to 20 U.S.C. § 1415(i). The district court correctly determined that MM's disagreement with one decision of one ALJ did not state a claim against the CDE for failure to properly oversee the OAH.

## CONCLUSION

The district court correctly dismissed MM's claims against Lafayette challenging the ALJ's statute of limitations ruling as being premature. The district court did not abuse its discretion in dismissing the fourth claim as duplicative and correctly held that the CDE has no authority to oversee the individual decisions of OAH's hearing officers. The district court's judgment is **AFFIRMED**.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON REUTERS—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2012 Thomson Reuters.